# EXHIBIT A

## Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

|  |  |
|---|---|
| In re:<br><br>AFH AIR PROS, LLC, *et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 25-10356<br><br>(Jointly Administered)<br><br>**Re: Docket No. ___** |

**INTERIM ORDER (A) AUTHORIZING THE DEBTORS
TO OBTAIN POSTPETITION FINANCING AND TO USE CASH
COLLATERAL, (B) GRANTING LIENS AND SUPERPRIORITY CLAIMS,
(C) GRANTING ADEQUATE PROTECTION, (D) MODIFYING THE AUTOMATIC
STAY, (E) SCHEDULING FINAL HEARING, AND (F) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") in the above-referenced chapter 11 cases (the "Chapter 11 Cases")

seeking entry of an interim order (this "Interim Order") pursuant to sections 105, 361, 362, 363(b),

363(c)(2), 363(e), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 507 and 552 of title 11 of the

---

[1] The last four digits of AFH Air Pros, LLC's tax identification number are 1228. Due to the large number of debtor entities in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the claims and noticing agent at https://www.veritaglobal.net/AirPros. The mailing address for the debtor entities for purposes of these chapter 11 cases is: 150 S. Pine Island Road, Plantation, Florida 33020.

United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 7007-1, 9013-1, 9013-2, and 9014-2 of the Local Rules of the United States Bankruptcy Court for the Northern District of Georgia (the "Local Rules"), and *Second Amended and Restated General Order 26-2019, Procedures for Complex Chapter 11 Cases*, dated February 6, 2023 (the "Complex Case Procedures"), that, among other things:

(i)      authorizes Debtor Air Pros Solutions, LLC (the "DIP Borrower") to obtain, and the other Debtors, as guarantors (each, a "Guarantor"), to guarantee on a joint and several basis, a senior secured priming and superpriority postpetition financing (the "DIP Facility") in the aggregate principal amount of $20,000,000, composed of (a) a "new money" multiple delayed draw term loan facility in an aggregate principal amount of $10,000,000 (the "New Money Loans"), of which (x) $4,000,000 (the "Initial DIP Loans") will be made available to be drawn upon entry of this Interim Order, and (y) an additional amount of up to $6,000,000 (the "Final DIP Loans") will be made available upon entry of the Final Order (as defined below), and (b) a "rollup" (or conversion) of $10,000,000 of Prepetition Obligations (as defined below) (the "Rollup Loans" and, together with the New Money Loans, the "DIP Loans"), of which (x) up to $4,000,000 will be rolled up on a dollar-for-dollar basis immediately upon each funding of the Initial DIP Loans following entry of the Interim Order and (y) the remainder will be rolled up immediately upon the first funding of Final DIP Loans following entry of the Final Order (as defined below), in each case of the foregoing clauses (a) and (b), subject to the terms and conditions of that certain *Senior Secured Priming and Superpriority Debtor-in-Possession Credit Agreement*, dated as of March [ ● ], 2025, among the DIP Borrower, Air Pros Solutions Holdings, LLC (as Holdings), the Guarantors, Alter Domus (US) LLC, as disbursing agent and collateral agent (the "DIP Agent"),

2

and financial institutions from time to time party thereto as lenders (the "DIP Lenders" and, together with the DIP Agent, the "DIP Secured Parties") substantially in the form attached hereto as **Exhibit B** (as such agreement may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with its terms and the terms of the DIP Orders, the "DIP Credit Agreement"[2] and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments, and amendments executed and delivered in connection therewith, including the "Loan Documents" as defined in the DIP Credit Agreement, the "DIP Documents");

(ii)    authorizes the Debtors to execute and deliver the DIP Documents and to perform such other acts as may be necessary, advisable, or appropriate in connection therewith and to incur, guarantee, pay, comply with, and perform all obligations owing thereunder to the DIP Secured Parties and granting the DIP Secured Parties allowed superpriority administrative expense claims in an amount of the DIP Obligations (as defined below) in each of the Chapter 11 Cases and in any Successor Case (as defined below), subject to the Carve-Out (as defined below);

(iii)    grants to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, (x) liens on all of the DIP Collateral (as defined below) pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, which liens shall be senior to the Primed Liens (as defined below) and shall be junior solely to any valid, enforceable, and non-avoidable liens that are (A) in existence on the Petition Date, (B) either perfected as of the Petition Date or perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code, and (C) senior in priority to the Prepetition Liens (as defined below) after giving effect to any intercreditor or subordination agreement, each as amended, restated, supplemented or otherwise

---

[2]  Capitalized terms used but not defined herein have the meanings given to them in the DIP Credit Agreement.

ACTIVE 707791045

modified from time to time prior to the Petition Date (all such liens, collectively, the "Prepetition Prior Liens"); provided, however, that the term "Prepetition Prior Liens" as used herein shall exclude the Prepetition Liens (as defined below); provided, further, for the avoidance of doubt, the term "Prepetition Prior Liens" shall include the valid, perfected, first priority security interest of American Express Travel Related Services Company, Inc. in that certain Certificate of Deposit account in the amount of $460,000 obtained by Debtor East Coast Mechanical, LLC from American Express National Bank, and (y) pursuant to section 364(c)(1) of the Bankruptcy Code, superpriority administrative expense claims having recourse to all prepetition and postpetition property of the Debtors' estates, now owned or hereafter acquired, including, upon entry of the Final Order, any Debtors' rights under section 506(c) of the Bankruptcy Code and the proceeds thereof;

(iv)    authorizes the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral"), including Cash Collateral in which the Prepetition Secured Parties (as defined below) and/or the DIP Secured Parties have a lien or other interest, in each case whether existing on the Petition Date, arising pursuant to this Interim Order or otherwise;

(v)    authorizes the Debtors to provide the Prepetition Secured Parties (as defined below) the Prepetition Adequate Protection (as defined below) as set forth herein;

(vi)    approving certain stipulations by the Debtors with respect to the Prepetition Credit Documents and the Prepetition Collateral (each as defined herein) as set forth herein;

(vii)    modifies the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order;

4

(viii)    schedules a final hearing (the "Final Hearing") on the Motion to be held on or prior to the Interim Period Outside Date (as defined below) to consider entry of a final order (the "Final Order," and together with the Interim Order, the "DIP Orders"), which grants all of the relief requested in the Motion on a final basis and which final order shall be in form and substance (including with respect to any subsequent modifications to the form or substance made in response to objections of other creditors or the Court) acceptable to (a) the Required DIP Lenders, (b) the Required Prepetition Lenders (as defined below), (c) to the extent that any modifications to the form and substance of the Final Order shall affect the rights or duties of the Prepetition Agent, the Prepetition Agent, and (d) to the extent that any modifications to the form and substance of the Final Order shall affect the rights or duties of the DIP Agent, the DIP Agent; and

(ix)    waives any applicable stay (including under Bankruptcy Rule 6004) and provides for immediate effectiveness of this Interim Order.

This Court having considered the Motion, the DIP Credit Agreement, the *Declaration of Andrew D.J. Hede in Support of Chapter 11 Filings and First Day Pleadings* (the "First Day Declaration"), the *Declaration of Jaspinder S. Kanwal in Support of the Emergency Motion of the Debtors for Entry of Interim and Final Orders (A) Authorizing the Debtors to Obtain Postpetition Financing and to Use Cash Collateral, (B) Granting Liens and Superpriority Claims, (C) Granting Adequate Protection, (D) Modifying the Automatic Stay, (E) Scheduling Final Hearing, and (F) Granting Related Relief* (the "DIP Declaration") and the evidence submitted or proffered at the hearing on this Interim Order (the "Interim Hearing"); an Interim Hearing having been held and concluded on March [ ● ], 2025; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the

5

Debtors, their creditors, their estates and all parties in interest, and is essential for the continued operation of the Debtors' business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A. **Petition Date**. On March 16, 2025 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Georgia (this "Court"). The Debtors have continued to manage and operate their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. As of the date hereof, no statutory committee of unsecured creditors (if such committee is appointed, the "Committee"), trustee, or examiner has been appointed in the Chapter 11 Cases. On March [ ● ], 2025, this Court entered an order directing joint administration of the Chapter 11 Cases.

B. **Jurisdiction and Venue**. This Court has core jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue for the Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, Local Rules 7007-1, 9013-1, 9013-4, and 9014-2, and Section G of the Complex Case Procedures.

C. **Notice**. The Interim Hearing was held pursuant to the authorization of Bankruptcy Rule 4001. Pursuant to Bankruptcy Rule 4001(b), (c) and (d), notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by

6

facsimile, electronic mail, overnight courier or hand delivery, to certain parties in interest, including: (i) the Office of the United States Trustee for the Northern District of Georgia (the "U.S. Trustee"), (ii) those entities or individuals included on the Debtors' list of 30 largest unsecured creditors on a consolidated basis, (iii) the Prepetition Agent (as defined below), (iv) the DIP Agent, and (v) counsel to the Prepetition Agent and the DIP Agent.

**D.** **Debtors' Stipulations Regarding the Prepetition Obligations**. Without prejudice to the rights of the Committee and other parties in interest solely to the extent set forth in Paragraph 7 below, the Debtors admit, stipulate, acknowledge, and agree (and this Paragraph D hereof shall be referred to herein collectively as the "Debtors' Stipulations") as follows:

(i)    Prepetition Obligations. Pursuant to that certain Credit Agreement, dated as of October 31, 2022 (as amended, restated, supplemented or otherwise modified from time to time in accordance with terms prior to the Petition Date, the "Prepetition Credit Agreement" and, collectively with any other agreements, documents, or instruments executed or delivered in connection therewith, and all other "Loan Documents" as defined therein, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Loan Documents"), among Air Pros Solutions Holdings, LLC ("Holdings"), Air Pros Solutions, LLC ("Borrower") and the Subsidiary Guarantors (as defined in the Prepetition Credit Agreement, together with Holdings and the Borrower, the "Prepetition Loan Parties"), the Lenders (as defined in the Prepetition Credit Agreement, the "Prepetition Lenders"), and Alter Domus (US) LLC, as disbursing agent and collateral agent (in such capacity, the "Prepetition Agent" and, together with the Prepetition Lenders, the "Prepetition Secured Parties"), the Prepetition Lenders agreed to extend certain loans and make other financial accommodations to the Prepetition Loan Parties. All liabilities and other obligations of the Debtors arising under the Prepetition Loan Documents and

7

applicable law and all other "Obligations" (as defined in the Prepetition Credit Agreement) shall collectively be referred to herein as the "<u>Prepetition Obligations</u>."

        (ii)    <u>Prepetition Liens and Prepetition Collateral</u>.  Pursuant to the Security Documents (as defined in the Prepetition Credit Agreement) (as amended, restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "<u>Prepetition Security Documents</u>"), by and among each of the Prepetition Loan Parties and the Prepetition Agent, each Prepetition Loan Party granted to the Prepetition Agent, in its capacity as collateral agent, for the benefit of itself and the other Prepetition Secured Parties, to secure the Prepetition Obligations, a security interest in and continuing lien (the "<u>Prepetition Liens</u>") on substantially all of the Prepetition Loan Parties' assets and properties (including Cash Collateral).  All "Collateral," as defined in the Prepetition Credit Agreement, granted or pledged by the Prepetition Loan Parties pursuant to any Prepetition Security Document or any other Prepetition Loan Document shall collectively be referred to herein as the "<u>Prepetition Collateral</u>."  As of the Petition Date, (I) the Prepetition Liens (a) are valid, binding, enforceable, and perfected liens, (b) were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein), and (d) are subject and subordinate only to (1) the DIP Liens (as defined below), (2) the Carve-Out (as defined below), and (3) the Prepetition Prior Liens, and (II) (x) the Prepetition Obligations constitute legal, valid, and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (y) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Prepetition Obligations exist, and

(z) no portion of the Prepetition Obligations or any transfers made to any or all of the Prepetition

Secured Parties are subject to avoidance, recharacterization, recovery, subordination, attack,

recoupment, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any

kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except for the priming

contemplated herein.

            (iii)   <u>Amounts Owed under Prepetition Loan Documents</u>.  As of the Petition

Date, the Debtors owed the Prepetition Secured Parties, pursuant to the Prepetition Loan

Documents, without defense, counterclaim, or offset of any kind, in respect of Loans (as defined

in the Prepetition Credit Agreement) made by the Prepetition Secured Parties, an aggregate

principal amount of not less than $220,406,882.85, *plus* any other Prepetition Obligations,

including all accrued and hereafter accruing and unpaid interest thereon and any additional fees,

expenses (including any reasonable attorneys', accountants', appraisers', and financial advisors'

fees and expenses that are chargeable or reimbursable under the Prepetition Loan Documents), and

other amounts now or hereafter due under the Prepetition Loan Documents and applicable law.

            (iv)   <u>Release of Claims</u>.  Subject to entry of the Final Order, and to the

reservation of rights set forth in Paragraph 7 below, each Debtor and its estate shall be deemed to

have forever waived, discharged, and released each of the Prepetition Secured Parties and their

respective affiliates, assigns or successors and the respective members, managers, equity security

holders, affiliates, agents, attorneys, financial advisors, consultants, officers, directors, employees

and other representatives of the foregoing (all of the foregoing, collectively, the "<u>Prepetition</u>

<u>Secured Party Releasees</u>") from any and all "claims" (as defined in the Bankruptcy Code),

counterclaims, causes of action (including, without limitation, causes of action in the nature of

"lender liability" and causes of action for usury or penalty or damages therefor, from any advances

9

or loans, or from the contracting for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate), defenses, setoff, recoupment, other offset rights, and other rights of disgorgement or recovery against any and all of the Prepetition Secured Party Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with the Prepetition Loan Documents, the Prepetition Obligations, the Prepetition Liens, or the debtor-creditor relationship between any of the Prepetition Secured Parties, on the one hand, and any of the Prepetition Loan Parties and/or their affiliates, on the other hand, including, without limitation, (i) any recharacterization, subordination, avoidance, disallowance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable non-bankruptcy law and (ii) any right, basis, or action to challenge or object to the amount, validity, or enforceability of the Prepetition Obligations or any transfers made on account of the Prepetition Obligations, or the validity, enforceability, priority, or non-avoidability of the Prepetition Liens.

      E.      **Findings Regarding the DIP Facility**.

      (i)      <u>Need for Postpetition Financing</u>.    The Debtors have an urgent and immediate need to obtain the DIP Facility and to use Cash Collateral to, among other things, permit the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers, and customers, to make payroll, to make capital expenditures, to satisfy other working capital and operational needs, to complete the Debtors' marketing and sale process, and to otherwise preserve and maximize the value of the Debtors' estates.    The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and borrowing under the DIP Facility is vital to a successful sale and/or to otherwise preserve the enterprise value of the Debtors' estates.    Immediate and irreparable harm will be caused to the Debtors and their estates

if immediate financing is not obtained and permission to use Cash Collateral is not granted, in each case in accordance with the terms of this Interim Order and the DIP Loan Documents.

(ii)    <u>No Credit Available on More Favorable Terms</u>.  As set forth in the Motion, the First Day Declaration and the DIP Declaration, the Debtors have determined, at the time hereof, that no acceptable financing on more favorable terms is available.  The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain secured credit on terms acceptable to the Debtors allowable only under sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code.  The Debtors are unable to obtain secured credit under section 364(d)(1) of the Bankruptcy Code without (a) granting to the DIP Secured Parties the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including, without limitation, the DIP Liens and the DIP Superpriority Claims (each as defined below), (b) allowing the DIP Lenders to provide (or to permit to remain outstanding, as applicable) the loans, letters of credit, and other financial accommodations under the DIP Facility on the terms set forth herein and in the DIP Loan Documents (all of the foregoing described in clauses (a) and (b) above, including, without limitation, the DIP Liens and the DIP Superpriority Claims, collectively, the "<u>DIP Protections</u>"), and (c) providing the respective Prepetition Secured Parties the adequate protection more fully described in Paragraph 4 below.

(iii)    <u>Adequacy of the Approved Budget</u>.  As set forth in the DIP Loan Documents, the Debtors have prepared and delivered to the DIP Secured Parties, the Approved Budget, a summary copy of which is attached as **Exhibit A** hereto (it being understood that the budget summarized on **Exhibit A** hereto has already been so approved). The Approved Budget has been reviewed by the Debtors, their management, and their advisors. The Debtors, their

11

management, and their advisors believe the Approved Budget and the estimate of administrative expenses due or accruing during the period covered by the Approved Budget were developed using reasonable assumptions, and based on those assumptions, the Debtors believe there should be sufficient available assets to pay all administrative expenses due or accruing during the period covered by the Approved Budget. As a condition to entry into the DIP Credit Agreement, the extensions of credit under the DIP Facility, and the authorization to use Cash Collateral, the DIP Secured Parties require, and the Debtors have agreed, that proceeds of the DIP Facility and the Cash Collateral shall be used in a manner consistent with the terms and conditions of the DIP Loan Documents and this Interim Order and in accordance with the Approved Budget (subject to Permitted Variances (as defined herein)).

F.    **Adequate Protection for Prepetition Secured Parties**. Based on the record at the Interim Hearing, the Prepetition Secured Parties have negotiated in good faith regarding the Debtors' use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses.  The Prepetition Agent (on behalf of and at the direction of the Prepetition Secured Parties)[3] has agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, during the Interim Period (as defined below), subject to the terms and conditions set forth herein, including the protections afforded a party acting in "good faith" under section 364(e) of the Bankruptcy Code.  In addition, the DIP Facility contemplated hereby provides for a priming of the Prepetition Liens pursuant to section 364(d) of the Bankruptcy Code.  The Prepetition Secured Parties are entitled to adequate protection as set forth herein, including, with respect to the Rollup Loans (as defined below) upon

---

[3]  Prepetition Secured Parties holding 100% of the Prepetition Obligations have expressly consented to the entry of this Interim Order and the relief provided herein.  For avoidance of doubt, the Prepetition Secured Parties expressly consented to the terms of the DIP Credit Agreement and the other DIP Loan Documents and the entry of the DIP Orders, subject to the terms herein.

ACTIVE 707791045

entry of the Final Order, pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code. Based on the Motion and the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements, use of the Cash Collateral of the Prepetition Secured Parties, and the DIP Facility contemplated hereby are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the consent of the Prepetition Secured Parties.

G.    **Section 552**.  Subject to entry of the Final Order, in light of the subordination of their liens and superpriority administrative expense claims (i) in the case of the DIP Secured Parties, to the Carve-Out (as defined below) and (ii) in the case of the Prepetition Secured Parties, to the Carve-Out, the DIP Superpriority Claims (as defined below), and the DIP Liens, each of the DIP Secured Parties and the respective Prepetition Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

H.    **Business Judgment and Good Faith Pursuant to Section 364(e)**.

(i)    Based on the record at the Interim Hearing, the DIP Lenders are willing to provide the DIP Facility to the Debtors, and the Prepetition Secured Parties are willing to consent to the Debtors' use of Cash Collateral, in each case during the Interim Period in accordance with, and pursuant to, this Interim Order and the DIP Loan Documents, as applicable.

(ii)    Based on the record at the Interim Hearing, the terms and conditions of the DIP Facility as set forth in the DIP Loan Documents and this Interim Order, and the fees, expenses, and other charges paid and to be paid thereunder or otherwise in connection therewith, are fair, reasonable, and the best available under the circumstances, and the Debtors' agreement to the terms and conditions of the DIP Loan Documents and to the payment of such fees reflect the

13

Debtors' exercise of prudent business judgment consistent with their fiduciary duties. Such terms and conditions are supported by reasonably equivalent value and fair consideration.

(iii)    Based on the record at the Interim Hearing, the DIP Facility and the DIP Loan Documents were negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties with the assistance and counsel of their respective advisors, and all of the DIP Obligations (as defined below) shall be deemed to have been extended by the DIP Secured Parties and their affiliates for valid business purposes and uses and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code or this Interim Order, and the DIP Liens, the DIP Superpriority Claims and the other DIP Protections shall be entitled to the full protection of section 364(e) of the Bankruptcy Code.

I.    **Relief Essential; Best Interest**.  For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2), and the Local Rules.  Absent granting the relief set forth in this Interim Order, the Debtors' estates and their ability to successfully sell their assets or otherwise preserve the enterprise value of the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Facility and authorization of the use of Cash Collateral in accordance with this Interim Order and the DIP Loan Documents is therefore in the best interests of the Debtors' estates and consistent with their fiduciary duties.

**NOW, THEREFORE**, on the Motion and the record before this Court with respect to the Motion, and with the consent of the Debtors, the Prepetition Agent (on behalf of the Prepetition Secured Parties), and the DIP Agent (on behalf of the DIP Secured Parties) to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

14

**IT IS ORDERED that**:

1.      **Motion Granted**.  The Motion is hereby granted in accordance with the terms and conditions set forth in this Interim Order.  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled are hereby denied and overruled.

2.      **DIP Loan Documents and DIP Protections**.

(a)      Approval of DIP Loan Documents.    The Debtors are expressly and immediately authorized to establish the DIP Facility, to execute, deliver, and perform under the DIP Loan Documents and this Interim Order, to incur the DIP Obligations (including the Rollup Loans) in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents, and to execute, deliver, and perform under all other instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Loan Documents and the creation and perfection of the DIP Liens described in, and provided for, by this Interim Order and the DIP Loan Documents.  The Debtors are hereby authorized to do and perform all acts and pay the principal, interest, fees, expenses, and other amounts described in the DIP Loan Documents as such become due pursuant to the DIP Loan Documents and this Interim Order, including, without limitation, all closing fees, arranger fees, commitment fees, and reasonable attorneys', financial advisors', and accountants' fees, and disbursements arising under the DIP Loan Documents and this Interim Order, which amounts shall not be subject to further approval of this Court, shall be non-refundable and shall not otherwise be subject to a Challenge (as defined below) pursuant to Paragraph 7 hereof or otherwise; provided, however, that the fees and expenses of Lender Professionals (as defined below) shall be subject to Paragraph 20(b) hereof.  Upon their execution and delivery, the DIP Loan Documents shall

ACTIVE 707791045

represent valid and binding obligations of the applicable Debtors enforceable against such Debtors in accordance with their terms.  Each officer of a Debtor is authorized execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive evidence of such officer's respective authority to act in the name of and on behalf of the Debtors.

(b)     <u>DIP Obligations</u>.    For purposes of this Interim Order, the term "<u>DIP Obligations</u>" shall mean all amounts and other obligations and liabilities owing by the Debtors under the DIP Loan Documents (including, without limitation, all "Obligations" as defined in the DIP Credit Agreement and obligations and liabilities owing by the Debtors on account of the Rollup Loans) and shall include, without limitation, the principal of, interest on, fees, costs, expenses, and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors', and other fees, costs, and expenses that are chargeable or reimbursable under the DIP Loan Documents and/or this Interim Order), and any obligations in respect of indemnity claims, whether contingent or otherwise; <u>provided</u>, <u>however</u>, payment of any fees and expenses of Lender Professionals shall be subject to Paragraph 20(b) hereof.

(c)     <u>Authorization to Incur DIP Obligations</u>.  To enable the Debtors to continue to operate their business, during the period from the entry of this Interim Order through and including the earliest to occur of (i) the entry of the Final Order, (ii) April 16, 2025, (iii) the Termination Declaration Date (as defined below), in each case unless extended by written agreement of the Debtors and the Required DIP Lenders without further order of this Court (such earliest date, as may be extended pursuant to this Paragraph 2(c), the "<u>Interim Period Outside Date</u>" and, the period from the entry of this Interim Order through and including Interim Period Outside Date, the "<u>Interim Period</u>") and, subject to the terms and conditions of this Interim Order

16

and the DIP Loan Documents, including, without limitation, the Budget Covenants as defined and contained in Paragraph 2(f) below, the DIP Borrower is hereby authorized to borrow New Money Loans in an aggregate principal amount of up to $4,000,000. Upon entry of a Final Order, the DIP Borrower shall, subject to the terms of the DIP Loan Documents, the Approved Budget, and such Final Order, be entitled to borrow all New Money Loan amounts under the DIP Facility and use Cash Collateral to fund the Debtors' working capital and other general corporate needs and pay such other amounts required or allowed to be paid pursuant to the DIP Loan Documents, the Approved Budget, the Final Order, and any other orders of this Court.

(d)    <u>Rollup Loans</u>.    Following entry of this Interim Order, Prepetition Obligations in the aggregate amount of up to $4,000,000 shall immediately and automatically be deemed to have been converted on a dollar-for-dollar basis into DIP Obligations and incurred as Rollup Loans under the DIP Facility concurrently with each funding of the Initial DIP Loans, and subject to and only following entry of a Final Order, Prepetition Obligations in the amount of $10,000,000 *less* the amount previously converted into Rollup Loans under the Interim DIP Order shall immediately and automatically be deemed to have been converted into DIP Obligations and incurred as Rollup Loans under the DIP Facility concurrently with the first funding of the Final DIP Loans; <u>provided</u> that the Rollup Loans shall be subject to challenge during the Challenge Period. The Rollup Loans shall be authorized as compensation for, and in consideration for, and solely on account of, the agreement of Prepetition Lenders to, among other things, provide liquidity relief and permit access to Cash Collateral, and the agreement of the DIP Lenders to provide new-money liquidity and permit access to Cash Collateral, and not as payments under, adequate protection for, or otherwise on account of, any Prepetition Obligations. The Prepetition Lenders would not have otherwise consented to the use of their Cash Collateral or the subordination of their

17

liens to the DIP Liens, and the DIP Secured Parties would not be willing to provide new-money liquidity, without the inclusion of the Rollup Loans in the DIP Obligations upon entry of this Interim Order or the Final Order, as applicable.

        (e)    <u>Approved Budget</u>.

        (i)    Attached hereto as **<u>Exhibit A</u>** is a 13-week cash flow budget (the "<u>Initial Approved Budget</u>").  Commencing on April 9, 2025, and continuing every fourth Wednesday thereafter (i.e., every four weeks), the Debtors shall prepare and deliver to the DIP Agent, DIP Lenders, and the Prepetition Agent an updated "rolling" 13-week cash flow budget, substantially in the form of the Initial Approved Budget, that sets forth projected aggregate cash receipts and operating disbursements on a weekly basis, which, once approved in writing by the DIP Lenders constituting Required Lenders under, and as defined in, the DIP Credit Agreement (collectively, the "<u>Required DIP Lenders</u>"), the Required Prepetition Lenders, each in their respective sole discretion, shall supplement and replace the Initial Approved Budget or Supplemental Approved Budget, as applicable, then in effect (each such updated budget that has been approved in writing by the Required DIP Lenders and the Required Prepetition Lenders, a "<u>Supplemental Approved Budget</u>") without further notice, motion, or Court order; <u>provided</u>, <u>however</u>, that unless and until the Required DIP Lenders and the Required Prepetition Lenders have approved such updated budget in writing, the Debtors shall remain subject to and be governed by the terms of the Initial Approved Budget or Supplemental Approved Budget, as applicable, then in effect, and none of the DIP Secured Parties and Prepetition Secured Parties shall, as applicable, have any obligation to fund such updated "rolling budget" or permit the use of Cash Collateral with respect thereto, as applicable.  The Initial Approved Budget and any

18

Supplemental Approved Budget, whichever is then in effect, shall constitute the "<u>Approved Budget</u>."

        (ii)      Beginning the second full week following the Petition Date, not later than 11:59 p.m. (prevailing Eastern Time) on Wednesday of each week, the Debtors shall deliver to the Required DIP Lenders and the Required Prepetition Lenders (with concurrent copies to the Committee (if appointed) and the U.S. Trustee) a cash flow reconciliation and variance report in form and detail acceptable to the Required DIP Lenders and Required Prepetition Lenders (a "<u>Variance Report</u>") that shows (a) comparisons of actual results on an aggregate basis against the Approved Budget for the prior periods ended and (b) for the Variance Report delivered following the end of the second full week following the Petition Date and every second week thereafter, a report setting forth compliance or non-compliance with the Permitted Variance for such Testing Period (as defined herein).  The first testing period (this and each subsequent testing period, a "<u>Testing Period</u>") shall be the period from the Petition Date through the end of the second full week after the end of the Petition Date, the second Testing Period shall be the period from the Petition Date through the end of fourth full week after the Petition Date, and each Testing Period thereafter shall be the rolling four-week period ending two weeks after the last day of the previous Testing Period.  As used herein, "<u>Permitted Variance</u>" means: (x) the cumulative total of actual cash operating disbursements on an aggregate basis during the applicable Testing Period does not exceed 115.0% of the total sum of budgeted operating disbursements during the same period, and (y) for each cash receipts line item, the cumulative total of actual cash receipts is not less than 85.0% of the total budgeted amount for such line item during the same period.  The Variance Report shall also provide a

19

commercially reasonable narrative explanation of each variance. For the avoidance of doubt, the cash disbursements considered for determining compliance with the Approved Budget shall exclude (i) the Debtors' disbursements in respect of professional fees paid to professionals of the Debtors and the Committee (if appointed), and (ii) fees, costs and expenses of the DIP Secured Parties and Prepetition Secured Parties (collectively, "Restructuring Fees").

(iii)    The Debtors' payment of any expenses or other disbursements other than those set forth in the Approved Budget (subject to Permitted Variances) or otherwise permitted by the DIP Documents or this Interim Order, in each case without the written consent of the Required DIP Lenders or the Required Prepetition Lenders, shall constitute a Termination Event; provided, further, that in the case of the Restructuring Fees, the Debtors shall pay such fees, costs and expenses in accordance with the DIP Documents and the DIP Orders, without being limited by the Approved Budget or constituting a Termination Event. The foregoing budget-related covenants set forth in this Paragraph 2(e) are collectively referred to herein as the "Budget Covenants."

(f)    Termination Events. The occurrence of any of the following events, unless waived in writing by the Required DIP Lenders and the Prepetition Lenders constituting "Required Lenders" under the Prepetition Credit Agreement (the "Required Prepetition Lenders") shall constitute a termination event under this Interim Order and the DIP Loan Documents (each, a "Termination Event"):

(i)    the occurrence of any Event of Default (as defined in the DIP Credit Agreement);

(ii)    the failure of the Debtors to comply with any of the Budget Covenants that has not been waived in writing by the Required DIP Lenders or the Required Prepetition Lenders after two days (which waiver may be done via email);

20

(iii)    the failure of the Debtors to meet any of the milestones and related deadlines set forth on **Exhibit C** to this Interim Order (as the same may be extended by the Required DIP Lenders and the Required Prepetition Lenders in writing, the "Milestones"), or the filing of any motion or other pleading by the Debtors seeking relief inconsistent with the Milestones, or any terms and conditions or relevant documentation contemplated by the Milestones, including, for the avoidance of doubt, any asset purchase agreement or order approving the sale of the Debtors' assets under section 363 of the Bankruptcy Code, are not in a form and substance acceptable to the Required DIP Lenders and the Required Prepetition Lenders;

(iv)    obtaining, after the Petition Date, credit or incurring indebtedness that is (A) secured by a security interest, mortgage or other lien on all or any portion of the Prepetition Collateral which is equal or senior to any security interest, mortgage or other lien of the DIP Agent and/or the Prepetition Agent, as applicable, or (B) entitled to priority administrative status which is equal or senior to that granted to the DIP Agent and/or the Prepetition Agent, as applicable, pursuant to this Interim Order, unless used to indefeasibly repay the DIP Obligations and/or the Prepetition Obligations, as applicable;

(v)    the bringing of a motion, taking of any action or the filing of any plan of reorganization or disclosure statement attendant thereto by the Debtors in the Chapter 11 Cases, or the entry of an order (A) to obtain additional financing under Section 364(c) or Section 364(d) of the Bankruptcy Code from any person other than the DIP Lenders not otherwise permitted by this this Interim Order or the DIP Loan Documents, or (B) except as provided in this Interim Order, to grant any lien other than Permitted Encumbrances (as defined in the DIP Credit Agreement) upon or affecting any DIP Collateral or Prepetition Collateral;

(vi)    the dismissal of any of the Chapter 11 Cases or the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

(vii)    any failure by the Debtors to make adequate protection payments or other payments to the Prepetition Agent, and/or the Prepetition Secured Parties, as applicable, as set forth in this Interim Order when due;

(viii)    the entry of an order which has not been withdrawn, dismissed or reversed (A) appointing an interim or permanent trustee in the Chapter 11 Cases or the appointment of an examiner or other responsible person with expanded powers in the Chapter 11 Cases, (B) granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code (x) to allow any creditor to execute upon or enforce a lien on or security interest in any DIP Collateral and/or Prepetition Collateral in excess of $100,000 or (y) with respect to any lien on or the granting of any lien on any DIP Collateral and/or Prepetition Collateral to any state or local environmental or regulatory agency or authority, (in each case with a value in excess of $250,000), or (C) amending, supplementing, staying, reversing, vacating or otherwise modifying any of this Interim Order, or the DIP Agent's or the DIP

21

Lenders', the Prepetition Agents', and/or the Prepetition Secured Parties' rights, benefits, privileges or remedies under this Interim Order, as applicable;

(ix)     the Debtors consolidating or combining with any other person except pursuant to a confirmed plan of reorganization;

(x)      the reversal, vacatur, or modification (without the express prior written consent of the Required DIP Lenders and the Required Prepetition Lenders) of this Interim Order or any provision thereof, or reversal, vacatur, or modification (without the express prior written consent of the DIP Agent and the DIP Lenders, the Prepetition Agent and the Prepetition Lenders) of any provision of this Interim Order directly and adversely affecting the rights of the DIP Secured Parties or Prepetition Secured Parties;

(xi)     the use, remittance or the application of the Prepetition Collateral or proceeds of the Prepetition Collateral in contravention of the terms of this Interim Order;

(xii)    without the prior written consent of the Required DIP Lenders and/or Required Prepetition Lenders, as applicable, the Debtors incurring, creating, assuming, suffering to exist or permitting any superpriority claim in the Chapter 11 Cases that is *pari passu* with or senior to the claims of the DIP Secured Parties and/or Prepetition Secured Parties, as applicable, other than the Carve-Out; or

(xiii)   the termination or modification of each Debtors' exclusivity as to the proposal set forth under the plan of reorganization or liquidation.

(g)      Interest, Fees, Costs and Expenses.  The DIP Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Interim Order and the DIP Loan Documents, in each case without further notice, motion, or application to, order of, or hearing before, this Court.  The Debtors shall pay on demand all fees, costs, expenses (including, subject to Paragraph 20(b) hereof, reasonable fees of the DIP Agent and the reasonable out-of-pocket legal and other professional fees and expenses of the DIP Agent and DIP Lenders) and other charges in accordance with the terms of the DIP Loan Documents.  Notwithstanding any provision herein to the contrary, all fees described in the DIP Credit Agreement are fully earned, all paid portions of such fees are finally allowed and non-refundable, all unpaid portions of such fees shall be immediately payable by the Debtors upon

22

entry of this Interim Order, and the payment of such fees, costs, and expenses shall not be subject to Challenge pursuant to Paragraph 7 hereof or otherwise.

(h)    Use of DIP Facility Proceeds and Proceeds of DIP Collateral.  The Debtors shall use the proceeds of all DIP Collateral (as defined below) and the DIP Loans solely in accordance with this Interim Order and the applicable provisions of the DIP Loan Documents. Without limiting the foregoing, the Debtors shall not be permitted to use the proceeds of the DIP Collateral and the DIP Loans to make any payments on account of any prepetition debt or obligation prior to the effective date of a chapter 11 plan or plans with respect to any of the Debtors, except with respect to (i) the Prepetition Obligations as set forth in this Interim Order and a Final Order; (ii) as provided in the orders granting the relief requested in the various motions filed by the Debtors on the Petition Date; (iii) as provided in other motions, proposed orders, and requests for relief, each in form and substance acceptable to the Required DIP Lenders; or (iv) as otherwise provided in the DIP Credit Agreement; provided, however, that nothing in this Paragraph 2(h) shall be construed to restrict the Debtors' authority to file any motion, proposed order, or request for relief that the Debtors, in consultation with their advisors, determine is necessary in exercise of their fiduciary duties.

(i)    Conditions Precedent.  The DIP Secured Parties and Prepetition Secured Parties each have no obligation to extend credit under the DIP Facility or permit use of any DIP Collateral proceeds, including Cash Collateral, as applicable, during the Interim Period unless and until all conditions precedent to the extension of credit and/or use of DIP Collateral or proceeds thereof under the DIP Loan Documents and this Interim Order have been satisfied in full or waived by the requisite DIP Secured Parties and the Prepetition Secured Parties in accordance with the DIP Loan Documents and this Interim Order.  In accordance with the DIP Loan Documents, the

23

Debtors are authorized and directed to deposit all proceeds of the DIP Loans in an account at Bank

of America (the "DIP Proceeds Account"), which DIP Proceeds Account and the funds therein

shall be used by the Debtors in accordance with the Approved Budget (subject to Permitted

Variances).

            (j)     DIP Liens.  As security for the DIP Obligations, the following security

interests and liens are hereby granted to the DIP Agent, for its own benefit and the ratable benefit

of the DIP Secured Parties, on all property of the Debtors, now existing or hereinafter acquired,

including, without limitation, all cash and cash equivalents (whether maintained with the DIP

Agent or otherwise), money, inventory, goods, accounts receivable, contract rights, other rights to

payment, intercompany loans and other investments, investment property, contracts, contract

rights, properties, plants, equipment, rolling stock, machinery, general intangibles, payment

intangibles, accounts, deposit accounts, documents, instruments, chattel paper, securities (whether

or not marketable), franchise rights, documents of title, letters of credit, letter of credit rights,

supporting obligations, leases and other interests in leaseholds (provided, however, with respect to

the Debtors' non-residential real property leases, no liens or encumbrances shall be granted or

extend to such leases themselves under this Interim Order, except as permitted in the applicable

lease, but rather any liens granted shall extend only to the proceeds realized upon the sale,

assignment, termination or other disposition of such leases, books and records related to the

foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or

other proceeds), real property, fixtures, patents, copyrights, trademarks, trade names, other

intellectual property, intellectual property licenses, capital stock of subsidiaries, tax and other

refunds, insurance proceeds, commercial tort claims, all other Collateral (as defined in the DIP

Loan Documents), and all other "property of the estate" (as defined in section 541 of the

24

Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements, and cash and non-cash proceeds of all of the foregoing, excluding claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law ("Avoidance Actions"), but, subject to entry of the Final Order, including any proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise (all of the foregoing collateral collectively referred to as the "DIP Collateral" and, all such liens granted to the DIP Agent for the benefit of the DIP Secured Parties pursuant to this Interim Order and the DIP Loan Documents, the "DIP Liens"):

> (i)      pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority Lien on all unencumbered DIP Collateral;

> (ii)     pursuant to section 364(c)(3) of the Bankruptcy Code, a junior Lien on all DIP Collateral that is subject solely to the Prepetition Prior Liens; and

> (iii)    pursuant to section 364(d)(1) of the Bankruptcy Code, a first priority, senior priming lien on all DIP Collateral (including, without limitation, Cash Collateral) that is senior to the Adequate Protection Liens (as defined below) and senior and priming to (x) the Prepetition Liens, and (y) Liens that are junior to the Prepetition Liens and the Adequate Protection Liens, after giving effect to any intercreditor or subordination agreements (the liens referenced in clauses (x) and (y), collectively, the "Primed Liens"); provided, however, that the liens described in this clause (iii) shall be junior solely to the Carve-Out and the Prepetition Prior Liens.

(k)      DIP Lien Priority.  For the avoidance of doubt, the DIP Liens granted to the DIP Agent for the ratable benefit of the DIP Secured Parties shall in each and every case be first priority senior liens that (i) are subject only to the Prepetition Prior Liens, and to the extent provided in the provisions of this Interim Order and the DIP Loan Documents, shall also be subject to the Carve-Out, and (ii) except as provided in sub-clause (i) of this subsection (k), are senior to all prepetition and postpetition liens of any other person or entity (including, without limitation,

the Primed Liens and the Adequate Protection Liens).  The DIP Liens and the DIP Superpriority

Claims (as defined below) (A) subject to entry of the Final Order, shall not be subject to sections

506(c), 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of

section 552 of the Bankruptcy Code, (B) with respect to the DIP Liens, shall not be subordinate

to, or *pari passu* with, (x) any lien that is avoided and preserved for the benefit of the Debtors and

their estates under section 551 of the Bankruptcy Code or (y) any intercompany or affiliate liens

or claims of the Debtors, and (C) shall be valid and enforceable against any trustee or any other

estate representative appointed or elected in the Chapter 11 Cases, upon the conversion of any of

the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings

related to any of the foregoing (each, a "Successor Case"), and/or upon the dismissal of any of the

Chapter 11 Cases to the maximum extent permitted by law.

        (l)    Enforceable Obligations.  Subject to Paragraph 7 of this Interim Order and

entry of a Final Order, the DIP Loan Documents shall constitute and evidence the valid and binding

DIP Obligations of the Debtors, which DIP Obligations shall be enforceable against the Debtors,

their estates and any successors thereto (including, without limitation, any trustee or other estate

representative in any Successor Case), and their creditors, in accordance with their terms.  No

obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP

Loan Documents, or this Interim Order shall be stayed (except as provided in an order by a court

of competent jurisdiction issuing a stay of this Interim Order pending appeal), restrained, voidable,

avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including,

without limitation, under sections 502(d), 544, 547, 548, or 549 of the Bankruptcy Code or under

any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or

similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset,

recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

(m) **Superpriority Administrative Claim Status**.  In addition to the DIP Liens granted herein, effective immediately upon entry of this Interim Order (and subject to Paragraph 7 and entry of the Final Order solely with respect to the Rollup Loans), all of the DIP Obligations shall constitute allowed superpriority administrative expense claims of the DIP Secured Parties pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the Carve-Out, over all administrative expense claims, adequate protection and other diminution claims (including the Adequate Protection Superpriority Claims (as defined below)), unsecured claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546, 726, 1113, and 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (the "DIP Superpriority Claims").  The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof.  Other than as provided in the DIP Credit Agreement and this Interim Order with respect to the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or

27

may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or

will be, senior to, prior to, or on a parity with the DIP Superpriority Claims or the DIP Obligations,

or with any other claims of the DIP Secured Parties arising hereunder.

3.      **Authorization to Use Cash Collateral and Proceeds of the DIP Facility**.  Subject

to, and solely in accordance with, the terms and conditions of this Interim Order and the DIP Loan

Documents, including without limitation, the Budget Covenants set forth in Paragraph 2(e) hereof

and Paragraph 16 hereof, (a) the Debtors are authorized to use proceeds of credit extended under

the DIP Facility, and (b) the Debtors are authorized to use Cash Collateral, in each case subject to

the Approved Budget and as otherwise agreed between the Debtors, the DIP Required Lenders,

and the Prepetition Required Lenders.

4.      **Adequate Protection for Prepetition Secured Parties**.  In consideration for the

use of the Prepetition Collateral (including Cash Collateral) and the priming of the Prepetition

Liens, the Prepetition Secured Parties shall receive the following adequate protection (collectively

referred to as the "Prepetition Adequate Protection"):

(a)      Adequate Protection Liens.  To the extent there is a diminution in value of

the interests of the Prepetition Secured Parties in the Prepetition Collateral (including Cash

Collateral) from and after the Petition Date (the "Diminution in Value of the Prepetition

Collateral") (provided, however, that Diminution in Value of Prepetition Collateral does not mean

diminution in value of the interests of the Prepetition Secured Parties in the Prepetition Collateral

resulting from a successful Challenge), the Prepetition Agent, for the benefit of the Prepetition

Secured Parties, is hereby granted, subject to the terms and conditions set forth below, pursuant to

sections 361, 363(e), and 364 of the Bankruptcy Code, liens upon all of the DIP Collateral (such

adequate protection replacement liens,   the "Adequate Protection Liens"), which Adequate

ACTIVE 707791045

Protection Liens on such DIP Collateral (A) shall be subject and subordinate only to the DIP Liens, the Prepetition Prior Liens, and the Carve-Out, and (B) shall be senior in priority to the Prepetition Liens. The Adequate Protection Liens and the Adequate Protection Superpriority Claims (as defined below) (A) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall be senior in priority and right of payment to (x) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code and (y) any intercompany or affiliate liens or claims of the Debtors, and (C) shall be valid and enforceable against any trustee or any other estate representative appointed in the Chapter 11 Cases or any Successor Cases, and/or upon the dismissal of any of the Chapter 11 Cases.

(b)     _Adequate Protection Superpriority Claims_.  To the extent of Diminution in Value of the Prepetition Collateral, the Prepetition Secured Parties are hereby further granted allowed superpriority administrative expense claims (such adequate protection superpriority claims, the "Adequate Protection Superpriority Claims"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114 and any other provision of the Bankruptcy Code, subject and subordinate only to the DIP Superpriority Claims and the Carve-Out to the extent provided herein and in the DIP Loan Documents, and payable from and having recourse to all of the DIP Collateral; provided, however, that the Prepetition Secured Parties shall

29

not receive or retain any payments, property, or other amounts in respect of the Adequate Protection Superpriority Claims unless and until all DIP Obligations have been Paid in Full (as defined below). Subject to the relative priorities set forth above, the Adequate Protection Superpriority Claims shall be against each Debtor on a joint and several basis. For purposes of this Interim Order, the terms "Pay in Full," "Paid in Full," and "Payment in Full" shall mean, with respect to any referenced DIP Obligations and/or Prepetition Obligations, (i) the indefeasible payment in full in cash of such obligations; (ii) the termination of all credit commitments under the DIP Loan Documents and/or Prepetition Loan Documents, as applicable, and (iii) the absence of any contingent indemnification claim arising from any pending or potential Challenge.

(c)    Further Adequate Protection. As further adequate protection, the Debtors (A) have committed, as set forth in this Interim Order, to timely comply with the Milestones and to grant the Prepetition Secured Parties the customary releases and waivers set forth herein, and (B) shall simultaneously provide copies of any reports sent to the DIP Secured Parties under this Interim Order or the DIP Credit Agreement to the Prepetition Secured Parties.

(d)    Interest and Professional Fees. As further adequate protection, and without limiting any rights of the Prepetition Secured Parties under section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition Secured Parties to the entry of this Interim Order and the Debtors' consensual use of Cash Collateral as provided herein, the Debtors shall (i) pay or reimburse currently the Prepetition Secured Parties for any and all of their accrued and past-due fees, costs, expenses, and charges to the extent, and at the times, payable under the Prepetition Loan Documents, (ii) on the last day of each calendar month commencing after the Petition Date, pay to the Prepetition Agent for prompt distribution to the applicable Prepetition Secured Parties any and all of the interest

30

accruing on the Prepetition Obligations under the Prepetition Credit Agreement at the default rate provided for in the Prepetition Credit Agreement (which, for the avoidance of doubt, shall be paid in kind with respect to the Prepetition Obligations and added to the principal amount owing under the Prepetition Loan Documents), and (iii) subject to Paragraph 20(b) hereof, pay currently all reasonable fees and out-of-pocket costs and expenses of the Prepetition Secured Parties (including without limitation reasonable attorneys' fees and costs and reasonable consulting, accounting, appraisal, investment banking and similar professional fees and charges) in accordance with the Prepetition Loan Documents, in the case of each of sub-clauses (i), (ii), and (iii) above, all whether accrued prepetition or postpetition and whether or not budgeted in the Approved Budget, and without further notice (except as provided in Paragraph 20(b) below with respect to postpetition professional fees, costs, and expenses), motion, or application to, order of, or hearing before, this Court; provided, however, that such payments shall be without prejudice to whether any such payments should be recharacterized or reallocated as payments of principal or disgorged, in the event that a successful Challenge to the Prepetition Liens results in the Prepetition Secured Parties holding partially or wholly unsecured claims in respect of the Prepetition Obligations.

(e)    Consent to Priming and Adequate Protection.  The Prepetition Agent, on behalf of the Prepetition Secured Parties, consents to the Prepetition Adequate Protection and the priming provided for herein; provided, however, that such consent of the Prepetition Agent, on behalf of the Prepetition Secured Parties, to the priming of the Prepetition Liens, the use of Cash Collateral, and the sufficiency of the Prepetition Adequate Protection provided for herein is expressly conditioned upon the entry of this Interim Order, and such consent shall not be deemed to extend to any other Cash Collateral usage or other replacement financing or debtor-in-possession financing other than the DIP Facility provided under the DIP Loan Documents; and

31

provided, further, that such consent shall be of no force and effect in the event this Interim Order is not entered or is entered and subsequently reversed, modified, stayed, or amended (unless such reversal, modification, stay, or amendment is acceptable to the Required Prepetition Lenders) or the DIP Loan Documents and DIP Facility as set forth herein are not approved.

(f)     Section 507(b) Reservation.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided herein to the Prepetition Secured Parties is insufficient to compensate for any Diminution in Value of the Prepetition Collateral of the interests of the Prepetition Secured Parties in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases; provided, however, any such additional section 507(b) claims shall be subject to the same relative priority as such party's Adequate Protection Superpriority Claims, as provided in this Interim Order.

5.     **Automatic Postpetition Lien Perfection**.  This Interim Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection, priority and non-avoidability of the DIP Liens and the Adequate Protection Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, control agreement, or other instrument or document which may otherwise be required under the law of any jurisdiction or (b) taking any other action to validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Liens and the Adequate Protection Liens with the priorities granted herein. Notwithstanding the foregoing, each of the DIP Agent and the Prepetition Agent (in the latter case, solely with respect to the Adequate Protection Liens) may, each in their sole discretion (acting at the direction of the Required DIP Lenders or Required Prepetition Lenders, as applicable), enter into and file, as applicable, financing statements, mortgages, security agreements, notices of liens, and other similar documents, and is hereby granted relief from the automatic stay of section 362

32

of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been filed or recorded at the time and on the Petition Date.  The applicable Debtors are authorized to execute and deliver to the DIP Agent and the Prepetition Agent, as applicable, all such financing statements, mortgages, notices, and other documents as such parties may reasonably request to evidence and confirm the contemplated priority of, the DIP Liens and the Adequate Protection Liens, as applicable, granted pursuant hereto.  Without limiting the foregoing, each of the DIP Agent and the Prepetition Agent, each in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.  Subject to the entry of the Final Order, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or obligations to any non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest, the proceeds thereof or other DIP Collateral shall have no force or effect.  To the extent that the Prepetition Agent is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, financing statement, or account control agreements, listed as loss payee under any of the Debtors' insurance policies, or is the secured party under any of the Prepetition Loan Documents, the DIP Agent shall also be deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies, and the secured party under each such Prepetition Loan Document, shall have all rights and powers attendant to that position (including, without limitation, rights of

33

enforcement), and shall act in that capacity and distribute any proceeds recovered or received first, for the benefit of the DIP Secured Parties in accordance with the DIP Loan Documents, second, subsequent to Payment in Full of all DIP Obligations, with respect to Prepetition Collateral, for the benefit of the Prepetition Secured Parties. The Prepetition Agent shall serve as agent for the DIP Agent for purposes of perfecting its respective liens on all DIP Collateral that is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

6.     <u>**Priority of Liens**</u>. Notwithstanding anything to the contrary in this Interim Order or the DIP Loan Documents, and for the avoidance of doubt:

    (a)    the Prepetition Prior Liens, shall have priority, after giving effect to any intercreditor or subordination agreement, over the DIP Liens, the Adequate Protection Liens, the Prepetition Liens, and the Carve-Out;

    (b)    the Carve-Out shall have priority over the DIP Liens, the Adequate Protection Liens, and the Prepetition Liens;

    (c)    the DIP Liens shall have priority over any lien on the DIP Collateral, subject only to the Prepetition Prior Liens and, to the extent provided in the provisions of this Interim Order and the DIP Loan Documents, the Carve-Out;

    (d)    the Adequate Protection Liens shall have priority over any lien on the Prepetition Collateral, subject only to the Prepetition Prior Liens, the Carve-Out, and the DIP Liens; and

    (e)    the Prepetition Liens shall have priority over any lien upon the Prepetition Collateral, subject only to the Prepetition Prior Liens, the Carve-Out, the DIP Liens, and the Adequate Protection Liens.

7.     <u>**Reservation of Certain Third Party Rights and Bar of Challenges and Claims**</u>. Except with respect to the releases set forth above at Paragraph D(iv), which shall remain subject to entry of the Final Order, the Debtors' Stipulations shall be binding upon the Debtors in all circumstances upon entry of this Interim Order. The Debtors' Stipulations shall be binding upon all other parties in interest, including the Committee, unless such Committee or any other party in

34

interest (including any chapter 11 trustee or chapter 7 trustee in a Successor Case, as provided herein) other than the Debtors *first*, commences, by the earliest of (x) with respect to the Committee, if appointed, sixty (60) calendar days from the formation of the Committee, (y) with respect to all parties in interest with standing other than the Debtors, seventy-five (75) calendar days following the date of entry of the Interim Order, or (z) as otherwise agreed to among the Debtors, Required DIP Lenders, Required Prepetition Lenders, and the Committee to the extent of an extension of such period effecting the Prepetition Secured Parties, if any (such time period established by the earliest of clauses (x), (y), and (z), as the same may be extended in accordance with this Paragraph 7, shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge is raised during the Challenge Period or (ii) with respect only to those parties who commence a Challenge during the Challenge Period, such Challenge is fully and finally adjudicated, shall be referred to as the "Challenge Period Termination Date"), (A) a contested matter, adversary proceeding, or other action or "claim" (as defined in the Bankruptcy Code) challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations, or (B) a contested matter, adversary proceeding, or other action against any or all of the Prepetition Secured Parties in connection with or related to the Prepetition Obligations (including, without limitation, Prepetition Obligations converted into DIP Obligations pursuant to the Rollup Loans), or the actions or inactions of any of the Prepetition Secured Parties arising out of or related to the Prepetition Obligations or otherwise, including, without limitation, any claim against any or all of the Prepetition Secured Parties in the nature of a "lender liability" cause of action, setoff, counterclaim, or defense to the Prepetition Obligations (clauses (A) and (B) collectively, the "Challenges" and, each individually, a "Challenge"), and *second*, obtains a final,

35

non-appealable order in favor of such party in interest sustaining any such Challenge in any such contested matter, adversary proceeding, or other action to which such Challenge is subject. If a chapter 7 trustee or a chapter 11 trustee is appointed during the Challenge Period, the Challenge Period Termination Date with respect to such trustee only, shall be the later of (i) the last day of the Challenge Period and (ii) the date that is thirty (30) days after the date on which such trustee is appointed. Except as otherwise expressly provided herein, upon the Challenge Period Termination Date and for all purposes in these Cases and any Successor Cases, (i) all payments made to or for the benefit of the Prepetition Secured Parties pursuant to, or otherwise authorized by, this Interim Order or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, or avoidance; (ii) any and all such Challenges by any party in interest shall be deemed to be forever barred; (iii) the Prepetition Obligations shall be deemed to be fully allowed secured claims within the meaning of section 506 of the Bankruptcy Code; and (iv) the Debtors' Stipulations, including the release provisions therein, shall be binding on all parties in interest, including any Committee. Notwithstanding the foregoing, to the extent any Challenge is asserted in accordance with this Interim Order, the Debtors' Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any Committee and on any other party in interest from and after the Challenge Period Termination Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence have been challenged in such adversary proceeding, contested matter, or other action. The Challenge Period may be extended (x) with the written consent of the Prepetition Agent (at the direction of the Required Prepetition Lenders) with respect to any Challenge against the Prepetition Secured Parties, in each case in their sole

36

discretion or (y) by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Period. Notwithstanding any provision to the contrary herein, nothing in this Interim Order shall be construed to grant standing on any party in interest, including any Committee, to bring any Challenge on behalf of the Debtors' estates.

8.        **Carve-Out**. Subject to the terms and conditions contained in this Paragraph 8, each of the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve-Out (as defined below):

(a)        Carve-Out. For purposes of this Interim Order, "Carve-Out" means (i) all unpaid fees required to be paid in these Cases to the clerk of the Court (including any noticing agent appointed by the Court) and to the U.S. Trustee under 28 U.S.C. § 1930(a); (ii) all reasonable fees and expenses up to $10,000 incurred by a trustee and payable under section 726(b) of the Bankruptcy Code; (iii) subject to the terms and conditions of this Interim Order and the Approved Budget, the unpaid fees, costs, and disbursements of professionals retained by the Debtors in these Cases and the Debtors' ordinary course professionals (collectively, the "Debtors' Professionals"), including, when earned, any monthly, restructuring, sale, or other transaction fees of any investment banker retained by the Debtors in these Cases, that are incurred prior to the delivery by the DIP Agent (at the direction of the Required DIP Lenders) of a Carve-Out Trigger Notice (as defined below) (the date on which any such Carve-Out Trigger Notice is delivered, the "Carve-Out Trigger Date") and that are allowed at any time pursuant to an order of the Court under sections 327, 328, 330, or 363 of the Bankruptcy Code, whether allowed before or after the Carve-Out Trigger Date (and solely to the extent allowed by the Court), and remain unpaid after application of any retainers being held by such professionals, provided that the Debtors' Professionals may

37

carry forward and carry backward budgeted but unused disbursements set forth in the Approved

Budget for such Debtors' Professionals for any week for use in any prior or subsequent week;

provided further, that notwithstanding anything herein to the contrary, for purposes of the

foregoing, prior to the Carve-Out Trigger Date, all fees and expenses of Jefferies LLC, solely to

the extent (1) provided in its engagement letter with the Debtors and approved by this Court and

(2) allowed by the Court at any time (whether allowed before or after the Carve-Out Trigger Date),

shall be deemed included as part of the Approved Budget; (iv) subject to the terms and conditions

of this Interim Order and the Approved Budget, the reasonable unpaid fees, costs, and

disbursements of professionals retained by the Committee in these Cases (collectively, the

"Committee's Professionals") and all reasonable unpaid out-of-pocket expenses of the members

of any Committee ("Committee Members") that are incurred prior to the Carve-Out Trigger Date

and that are allowed by the Court under sections 328, 330, or 1103 of the Bankruptcy Code, in an

aggregate amount (for both Committee Members and the Committee's Professionals); (v) the

reasonable unpaid fees, costs, and disbursements of the Debtors' Professionals that are incurred

after the Carve-Out Trigger Date, that are allowed by the Court under sections 327, 328, 330 or

363 of the Bankruptcy Code, in an aggregate amount not to exceed $650,000 (inclusive of any

unused prepetition retainers held by such professionals) (the "Debtors' Professionals Carve-Out

Cap"); and (vi) the reasonable fees, costs, and disbursements of the Committee Professionals and

the reasonable expenses of Committee Members that are incurred at any time after the Carve-Out

Trigger Date, that are allowed by the Court under sections 328 or 1103 of the Bankruptcy Code,

in an aggregate amount (for both Committee Members and the Committee's Professionals) not to

exceed $75,000 (the "Committee Carve-Out Cap" and, together with the Debtors' Professionals

Carve-Out Cap, the "Post-Default Carve-Out Cap") (clauses (i), (ii), (iii), (iv), (v), and (vi)

collectively, the "Carve-Out").  The term "Carve-Out Trigger Notice" shall mean a written notice delivered by the DIP Agent (at the direction of the Required DIP Lenders) to the Debtors' counsel, the U.S. Trustee, and lead counsel to any Committee appointed in these Cases, which notice may only be delivered following the occurrence and during the continuation of any Termination Event. After the Carve-Out Trigger Date, upon the later of five (5) Business Days following (x) the liquidation or sale of any DIP Collateral and (y) any order of the Court allowing for payment of unpaid fees, costs and disbursements of the Debtors' Professionals, the Committees' Professionals or the Committee Members that are incurred after the Carve-Out Trigger Date, all such allowed amounts (including any fees, costs, and disbursements of the Case Professionals incurred prior to the Carve-Out Trigger Date, subject in each case to the Approved Budget) shall be paid from the net proceeds of such DIP Collateral to the applicable Debtors' Professional, Committee Professional or Committee Member, provided, however, that in no circumstance shall the aggregate amounts paid on account of such fees, costs and disbursements incurred after the Carve-Out Trigger Date exceed, as applicable, the Debtors' Professionals Carve-Out Cap or the Committee Carve-Out Cap.  No amounts set forth in this subparagraph (a) with respect to the Post-Default Carve-Out Cap may be modified without the prior written consent of the Required DIP Lenders and the Required Prepetition Lenders.

(b)     Case Professionals Reserve Account. Before the Carve-Out Trigger Date, but after the consummation of each sale of the Debtors' assets pursuant to the bidding procedures contemplated by the Milestones (each, an "Approved Sale"), the Debtors shall fund a trust account (the "Case Professionals Reserve Account") equal to the amounts set forth in the Approved Budget for the Debtors' Professionals (excluding any investment banker retained by the Debtors) and Committee's Professionals (collectively, the "Case Professionals") for the sole purpose of paying

39

the fees and expenses of the Case Professionals, provided that the funds in the Case Professional Reserve Account shall be disbursed to pay the approved fees and costs of each Case Professional in an amount not to exceed the aggregate amount budgeted for such Case Professional in the Approved Budget; provided, however, for the avoidance of doubt, no funds in the Case Professionals Reserve Account shall be disbursed to pay the fees and costs of any investment banker retained by the Debtors.  To the extent that the actual amount held in the Case Professional Trust Account exceeds the actual amount of the Case Professionals' fees and expenses incurred through and including the Carve-Out Trigger Date, the Carve-Out shall be reduced by such excess amount dollar-for-dollar.  The Case Professionals Reserve Account and all amounts therein shall not be DIP Collateral and shall not be subject to the DIP Liens, the Adequate Protection Liens, or the Adequate Protection Superpriority Claims; provided, however, any amounts in the Case Professional Reserve Account after payment of all allowed professional fees of the Case Professionals shall be returned to the Debtors and shall be DIP Collateral.

(c)     Carve-Out Reserve.  On the Carve-Out Trigger Date, the Carve-Out Trigger Notice shall constitute a demand to the Debtors to use all cash on hand as of such date any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Carve-Out. The Debtors shall deposit and hold such amounts in a segregated account (the "Carve-Out Reserve Account") in trust at an institution designated by the DIP Agent.  All funds in the Carve-Out Reserve Account shall be used (i) to pay the obligations set forth in Paragraph 8(a)(i)–(iv) and then (ii) to pay the obligations set forth in Paragraph 8(a)(v)–(vi), and solely with respect to this clause (ii) up to the Post-Default Carve-Out Cap.  Any amounts in the Carve-Out Reserve Account after the payment of the obligations set forth in Paragraph 8(a)(i)–(vi) shall be returned to the Debtors and shall be DIP Collateral.

40

(d)    <u>No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees</u>.  Subject to their obligations under Paragraph 8(a) hereof, nothing in this Interim Order or otherwise shall be construed (i) to obligate the Prepetition Agent or any other Prepetition Secured Party in any way to pay compensation to, or to reimburse expenses of, any of the Case Professionals, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement or (ii) to increase the Carve-Out if actual allowed fees and expenses of any of the Case Professionals incurred after the delivery of a Carve-Out Trigger Notice are higher in fact than the Post-Default Carve-Out Cap.  The respective Prepetition Secured Parties' liens and claims shall be subject to the Carve-Out as set forth in this Interim Order.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any Committee, any other official or unofficial committee in these Cases, or of any other person or entity, or shall affect the right of any DIP Secured Party or any Prepetition Secured Party to object to the allowance and payment of such fees and expenses.

(e)    <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>.  Prior to the occurrence of the Termination Declaration Date, the Debtors shall be permitted to pay (or to fund to the Trust Account to the extent permitted herein), subject to this Interim Order, allowed fees of the Case Professionals, subject to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any interim compensation procedures order entered by this Court.

9.    **<u>Waiver of 506(c) Claims</u>**.  Subject to the entry of the Final Order, as a further condition of the DIP Facility and any obligation of the DIP Secured Parties to make credit extensions pursuant to the DIP Loan Documents and as a condition to the respective Prepetition Secured Parties consenting to the priming set forth herein and to the use of Cash Collateral (and all such parties' consent to the payment of the Carve-Out to the extent provided herein), no costs

41

or expenses of administration of the Chapter 11 Cases or any Successor Cases shall be charged against or recovered from or against any or all of the Prepetition Secured Parties, the Prepetition Collateral, and the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the Prepetition Agent (at the direction of the Required Prepetition Lenders), as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the Prepetition Secured Parties.

10. **Protection of DIP Secured Parties' Rights**.

(a)    Unless the requisite DIP Secured Parties under the DIP Loan Documents shall have provided their prior written consent or all DIP Obligations have been Paid in Full, there shall not be entered in these proceedings, or in any Successor Cases, any order which authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral and/or that is entitled to administrative priority status, in each case which is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the other DIP Protections and the Adequate Protection Liens and Adequate Protection Superpriority Claims granted pursuant to this Interim Order to the DIP Secured Parties and the Prepetition Secured Parties, as applicable; or (ii) the use of Cash Collateral for any purpose other than to Pay in Full the DIP Obligations or as otherwise permitted in the DIP Loan Documents and this Interim Order.

(b)    The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will (i) maintain books, records, and accounts to the extent and as required by the DIP Loan Documents, (ii) reasonably cooperate, consult with, and provide to the DIP Secured Parties and the Prepetition Secured Parties all such information and documents as required or allowed under the DIP Loan Documents or the provisions of this Interim Order or the Prepetition

Loan Documents, as applicable, (iii) permit representatives of each of the DIP Agent and the Prepetition Agent such rights to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, and independent public accountants as and to the extent provided in the DIP Loan Documents and/or the Prepetition Loan Documents, as applicable, and (iv) permit the DIP Agent and the Prepetition Agent and their respective representatives to consult with the Debtors' management and advisors on matters concerning the general status of the Debtors' businesses, financial condition, and operations.  Notwithstanding anything to the contrary contained herein, nothing in this Interim Order shall require the Debtors to waive any right to attorney-client, work product, or similar privilege, and nothing in this Interim Order shall require the Debtors to provide the DIP Agent or the Prepetition Agent or their respective financial advisors with any information subject to attorney-client privilege or consisting of attorney work product.

11.    **Proceeds of Subsequent Financing**.  Without limiting the provisions and protections of Paragraph 10 above, if at any time prior to the Payment in Full of all the DIP Obligations (including subsequent to the confirmation but prior to the effective date of any chapter 11 plan or plans with respect to any of the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d), or any other provision of the Bankruptcy Code in violation of the DIP Loan Documents, then all of the cash proceeds derived

43

from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent until Payment in Full of the DIP Obligations in accordance with the terms herein.

12.     **Cash Collection**.  From and after the date of the entry of this Interim Order, all collections and proceeds of any DIP Collateral or services provided by any Debtor and all Cash Collateral which shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same bank accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition Loan Documents (or in such other accounts as are designated by the DIP Agent (at the direction of the Required DIP Lenders) from time to time) (collectively, the "Cash Collection Accounts"), which accounts shall be subject to the sole dominion and control of the DIP Agent (and the funds in such accounts may be used by the Debtors to the extent provided in this Interim Order and the DIP Loan Documents).  Unless otherwise agreed to in writing by the Required DIP Lenders and the Required Prepetition Lenders, the Debtors shall maintain no accounts except those identified in the Court's order approving the Debtors' continued operation of their cash management system.

13.     **Rights and Remedies Upon Termination Event**.  Any automatic stay otherwise applicable to the DIP Secured Parties or the Prepetition Secured Parties, is hereby modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the DIP Secured Parties and/or the Prepetition Secured Parties, as applicable, to exercise the following rights and remedies upon the occurrence and during the continuance of any Termination Event (as set forth in Paragraph 2(g) of this Interim Order):

(a)     At any time after written notice of any Termination Event by the DIP Agent (at the direction of the Required DIP Lenders), and, upon Payment in Full of the DIP Obligations

44

the Prepetition Agent (at the direction of the Required Prepetition Lenders), as applicable, to the

Debtors, the Committee, or the Prepetition Agent, as applicable, and the U.S. Trustee (such notice

shall be referred to herein as a "Termination Declaration," and the earliest date on which a

Termination Declaration is provided shall be referred to herein as the "Termination Declaration

Date"), and provided such Termination Event is not cured by the Debtors on or before five (5)

Business Days following a Termination Declaration Date, the DIP Secured Parties, and, upon

Payment in Full of the DIP Obligations, the Prepetition Secured Parties, as applicable, shall have

the right to: (i) terminate any or all of the DIP Loans; (ii) terminate the DIP Facility; and

(iii) declare a termination, reduction, or restriction on the ability of the Debtors to use any proceeds

of the DIP Facility or DIP Collateral, including Cash Collateral (except to pay payroll and other

expenses critical to avoid immediate and irreparable harm to the Debtors' business and assets (but

in no event in violation of the Budget Covenants)).

   (b) Five (5) Business Days following a Termination Declaration Date (provided

that the Debtors have not cured the existing Termination Events during such period), the DIP

Secured Parties, and, upon payment in Full of the DIP Obligations and/or the Prepetition Secured

Parties, as applicable, shall have further relief from the automatic stay, without further order of

this Court, to the extent necessary to (i) declare the principal amount then outstanding of, and the

accrued interest on, any or all of the DIP Obligations and all other amounts payable by the Debtors

under the DIP Loan Documents to be forthwith due and payable, whereupon such amounts shall

be immediately due and payable without presentment, demand, protest, or other formalities of any

kind, all of which are hereby expressly waived by the Debtors, (ii) foreclose on all or any portion

of the DIP Collateral or Prepetition Collateral, as applicable, or (iii) otherwise exercise remedies

against the DIP Collateral or Prepetition Collateral, as applicable, permitted by applicable

45

nonbankruptcy law. Unless during such period the Court enters an order or otherwise directs the parties to the contrary, the automatic stay, as to applicable party noticing such Termination Event, shall automatically terminate at the end of such five (5) Business Day period, without further notice or order.

(c)    All proceeds realized in connection with the exercise of the rights and remedies of the DIP Secured Parties shall be turned over to the DIP Agent for application to the other DIP Obligations under, and in accordance with, the provisions of the DIP Loan Documents until Payment in Full of the DIP Obligations; provided, that in the event of the liquidation of the Debtors' estates after the occurrence and during the continuance of a Termination Event, the Carve-Out shall be funded into a segregated account exclusively (i) first, from proceeds of any unencumbered assets of the Debtors, and (ii) then from Cash Collateral received by the DIP Agent subsequent to the date of termination of the DIP Obligations and prior to the distribution of any such Cash Collateral to any other parties in interest.

(d)    Subject to entry of the Final Order, and notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agent or the other DIP Secured Parties contained in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon five (5) Business Days' written notice to the Debtors and any landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property that a Termination Event has occurred and is continuing, the DIP Agent (at the direction of the Required DIP Lenders) or its designee (i) may enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license

46

and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets of the Debtors, which are owned by or subject to a Lien of any third party and which are used by Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this Paragraph 13(d) without interference from lienholders or licensors thereunder, subject to such lienholders' or licensors' rights under applicable law; provided, however, that the DIP Agent, on behalf of the DIP Secured Parties, shall pay only rent and additional rent, fees, royalties, or other obligations of the Debtors that first arise after the written notice referenced above from the DIP Agent and that accrue during the period of such occupancy or use by such DIP Agent calculated on a *per diem* basis.  Nothing herein shall require the Debtors, the DIP Agent, or the other DIP Secured Parties to assume any lease or license under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the DIP Agent and the other DIP Secured Parties in this Paragraph 13(d). Notwithstanding anything to the contrary herein, the DIP Agent and the other DIP Secured Parties may only enter upon a leased premises of the Debtors after a Termination Event in accordance with (i) a separate written agreement among the DIP Agent, the other DIP Secured Parties, and the applicable landlord for the leased premises, (ii) pre-existing rights of the DIP Agent or the other DIP Secured Parties under applicable non-bankruptcy law, (iii) written consent of the applicable landlord for the leased premises, or (iv) entry of an order by this Court approving such access to the leased premises after notice and an opportunity to be heard for the applicable landlord for the leased premises.

(e)     The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of this Interim Order and the DIP Loan Documents as necessary to (i) permit the Debtors to grant the Adequate Protection Liens and the DIP Liens and to incur all liabilities and obligations to the Prepetition Secured Parties and the DIP Secured Parties

47

under the DIP Loan Documents, the DIP Facility, and this Interim Order, (ii) authorize the DIP

Secured Parties and the Prepetition Secured Parties to retain and apply payments hereunder; and

(iii) otherwise to the extent necessary to implement and effectuate the provisions of this Interim

Order.

14.    **Restriction on Use of Proceeds**.  Notwithstanding anything herein to the contrary

(including, without limitation, in Paragraph 8 hereof), no loans and/or proceeds from the DIP

Facility, DIP Collateral, Cash Collateral (including any prepetition retainer held by any

professionals for the below-referenced parties), Prepetition Collateral, or any portion of the Carve-

Out may be used by (a) any Debtor, any Committee or trustee or other estate representative

appointed in the Chapter 11 Cases or any Successor Cases (or to pay any professional fees and

disbursements incurred in connection therewith) prosecute any Challenge or any other litigation

in connection with the value of the Prepetition Collateral or the DIP Collateral; and (b) any of the

Debtors, any Committee, and any trustee or other estate representative appointed in the Chapter

11 Cases or any Successor Cases (or to pay any professional fees and disbursements incurred in

connection therewith) (i) assert, join, commence, support, or prosecute any action for any claim,

counter-claim, action, proceeding, or other contested matter seeking any order, judgment,

determination, or similar relief against any or all of the DIP Secured Parties, the Prepetition

Secured Parties, and their respective officers, directors, employees, agents, attorneys, affiliates,

assigns, or successors, with respect to any transaction, occurrence, omission, action, or other matter

(including formal discovery proceedings in anticipation thereof), including, without limitation, (A)

any Challenges and any Avoidance Actions or other actions arising under chapter 5 of the

Bankruptcy Code; (B) any action with respect to the validity, enforceability, priority, and extent

of the DIP Obligations and/or the respective Prepetition Obligations, or the validity, extent, and

priority of the DIP Liens, the Prepetition Liens, or the Adequate Protection Liens; (C) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Liens, the other DIP Protections, the Prepetition Liens, the Adequate Protection Liens, or the other Prepetition Adequate Protection; (D) except to contest in good faith the occurrence or continuance of any Termination Event as permitted in Paragraph 13, any action seeking, or having the effect of, preventing, hindering, or otherwise delaying any or all of the DIP Secured Parties' (and, after the Payment in Full of the DIP Obligations, the Prepetition Secured Parties') assertion, enforcement, or realization on the Cash Collateral or the DIP Collateral in accordance with the DIP Loan Documents, the Prepetition Loan Documents, as applicable, or this Interim Order; and/or (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties or the Prepetition Secured Parties hereunder or under the DIP Loan Documents, or the Prepetition Loan Documents, as applicable; provided, that only up to $75,000 in the aggregate of the Carve-Out, any DIP Collateral, any Prepetition Collateral, any Cash Collateral or proceeds of the DIP Facility may be used by the Committee (to the extent such committee is appointed) to investigate (but not prosecute) the extent, validity, and priority of the Prepetition Obligations, the Prepetition Liens, or any other claims against the Prepetition Secured Parties so long as such investigation occurs within the Challenge Period; (iii) pay any fees or similar amounts to any person (other than the Prepetition Secured Parties) who has proposed or may propose to purchase interests in any of the Debtors without the prior written consent of the Required DIP Lenders; or (iv) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral, unless otherwise permitted hereby, without the consent of the DIP Secured Parties or the Prepetition Secured Parties, as applicable.

15.     **Proofs of Claim**.  Upon entry of the Final Order, the Prepetition Secured Parties

will not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for

any claim allowed herein.  The Debtors' Stipulations shall be deemed to constitute a timely filed

proof of claim for the Prepetition Secured Parties.  Notwithstanding any order entered by the Court

in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases to

the contrary, the Prepetition Agent, for the benefit of itself and the other Prepetition Secured

Parties, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend

and/or supplement, as they see fit) a proof of claim and/or single consolidated master proof of

claim in the Chapter 11 Cases or Successor Cases (including for the avoidance of doubt, in the

lead case of AFH Air Pros, LLC) and such master proof of claim shall be deemed to constitute the

filing of such proof of claim in each of the Chapter 11 Cases of all Debtors against whom a claim

may be asserted.

16.     **Preservation of Rights Granted Under the Interim Order**.

(a)     <u>No Non-Consensual Modification or Extension of Interim Order</u>.  The

Debtors irrevocably waive any right to seek any amendment, modification, or extension of this

Interim Order without the prior written consent of the Required DIP Lenders and the Required

Prepetition Lenders, and no such consent shall be implied by any other action, inaction, or

acquiescence of the DIP Secured Parties or any of the Prepetition Secured Parties.  Based on the

findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy

Code, which is applicable to the DIP Facility contemplated by this Interim Order, in the event any

or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed

by a subsequent order of this Court or any other court, the DIP Secured Parties and the Prepetition

50

Secured Parties shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code.

(b) <u>Dismissal</u>. If any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), to the fullest extent permitted by law, that (i) the DIP Protections and the Prepetition Adequate Protection shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations have been Paid in Full and the Prepetition Obligations have been Paid in Full (and that all DIP Protections and the Prepetition Adequate Protection shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such DIP Protections and the Prepetition Adequate Protection.

(c) <u>Survival of Interim Order</u>. The provisions of this Interim Order and the DIP Loan Documents, any actions taken pursuant hereto or thereto, and all of the DIP Protections, the Prepetition Adequate Protection, and all other rights, remedies, liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties shall survive, and shall not be modified, impaired, or discharged by, the entry of any order confirming any plan of reorganization in any Case, converting any Case to a case under chapter 7, dismissing any of the Chapter 11 Cases, withdrawing of the reference of any of the Chapter 11 Cases or any Successor Cases or providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court, or terminating the joint administration of these Cases or by any other act or omission except as otherwise provided therein. The terms and provisions of this Interim Order, including all of the DIP Protections, the Prepetition Adequate

Protection, and all other rights, remedies, liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties, shall continue in full force and effect notwithstanding the entry of any such order, and such DIP Protections and Prepetition Adequate Protection shall continue in these proceedings and in any Successor Cases, and shall maintain their respective priorities as provided by this Interim Order.  Subject to the provisions of this Interim Order and the DIP Loan Documents that permit the treatment of the DIP Obligations under the DIP Facility pursuant to a chapter 11 plan with respect to any of the Debtors, the DIP Obligations shall not be discharged by the entry of an order confirming a chapter 11 plan, the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code, subject to entry of the Final Order.

17.    **Credit Bidding**.  Subject to section 363(k) of the Bankruptcy Code, the DIP Agent (or its assignee, which may be an acquisition vehicle) (at the direction of the Required DIP Lenders) shall have the right to credit bid up to the full amount of the outstanding DIP Obligations including any accrued interest and expenses, in any sale of DIP Collateral, whether such sale is effectuated through sections 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, and the Prepetition Agent (or its assignee, which may be an acquisition vehicle) (at the direction of the Required Prepetition Lenders) shall have the unqualified right to credit bid up to the full amount of any remaining Prepetition Obligations in any sale of Prepetition Collateral, whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, subject, in each case, to the satisfaction of the DIP Obligations, or as otherwise consented to by the Required DIP Lenders. For the avoidance of doubt, no credit bid of DIP Obligations shall be subject to challenge for "cause" or otherwise.

18. **Disposition of DIP Collateral and Prepetition Collateral**. Except as contemplated by the DIP Documents, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral or Prepetition Collateral other than in the ordinary course of business without the prior written consent of the Required DIP Lenders and the Required Prepetition Lenders (and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Secured Parties or the Prepetition Secured Parties).

19. **Insurance Policies**. Subject to entry of the Final Order, the DIP Secured Parties, and the Prepetition Secured Parties shall be deemed to be named as additional insureds and loss payees on each insurance policy maintained by the Debtors which in any way relates to the Collateral, subject in all respects to the relative priorities set forth therein and in this Interim Order.

20. **Other Rights and Obligations**.

(a) <u>Expenses</u>. As and to the extent provided in the DIP Loan Documents, and to the extent set forth in the Approved Budget, the applicable Debtors will pay all reasonable fees of the DIP Agent and all reasonable expenses incurred by the DIP Agent and DIP Lenders (including, without limitation, the reasonable fees and disbursements of all counsel for the DIP Agent and DIP Lenders and any internal or third-party appraisers, consultants, and auditors advising the DIP Agent).

(b) <u>Notice of Professional Fees</u>. Professionals for the DIP Secured Parties and the Prepetition Secured Parties (collectively, the "<u>Lender Professionals</u>") shall not be required to comply with the U.S. Trustee fee rules or guidelines or submit invoices to the Court, U.S. Trustee, any Committee or any other party-in-interest absent further court order. Copies of summary invoices shall be submitted to the Debtors, the U.S. Trustee and counsel for any Committee by such Lender Professionals. The summary invoices shall be sufficiently detailed to enable a

determination as to the reasonableness of such fees and expenses; provided, however, that such summary invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such summary invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine.  If the Debtors, U.S. Trustee, or counsel for any Committee object to the reasonableness of the fees and expenses of any of the Lender Professionals and cannot resolve such objection, the Debtors, U.S. Trustee, or the Committee, as the case may be, shall file with the Court and serve on such Lender Professionals an objection (the "Fee Objection") limited to the issue of the reasonableness of such fees and expenses within ten (10) days of receipt of such invoices.  Any hearing on an objection to payment of any fees, costs, and expenses set forth in a professional fee invoice shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs, and expenses that are the subject of such objection.  The Debtors shall timely pay in accordance with the terms and conditions of this Interim Order the undisputed fees, costs, and expenses reflected on any invoice irrespective of whether a Fee Objection has been timely filed.  The Debtors shall indemnify the DIP Agent and the DIP Lenders (and other applicable parties) to the extent set forth in the DIP Loan Documents, including, without limitation, as provided in Section 9.05 of the DIP Credit Agreement.  All such unpaid fees, costs, expenses, charges, and indemnities of the DIP Agent that have not been disallowed by this Court on the basis of an objection filed by the U.S. Trustee or the Committee (or any subsequent trustee of the Debtors' estates) in accordance with the terms hereof shall constitute DIP Obligations and shall be secured by the DIP Collateral as specified in this Interim Order.

ACTIVE 707791045

(c)    Binding Effect.  Subject to Paragraph 7 above, the provisions of this Interim

Order, including all findings herein, and the DIP Loan Documents shall be binding upon all parties

in interest in these Cases, including, without limitation, the DIP Secured Parties, the Prepetition

Secured Parties, any Committee, and the Debtors and their respective successors and assigns

(including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any

of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any

other fiduciary or responsible person appointed as a legal representative of any of the Debtors or

with respect to the property of the estate of any of the Debtors), whether in any of the Chapter 11

Cases, in any Successor Cases, or upon dismissal of any such Case or Successor Case; provided,

however, that the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation

to permit the use of Cash Collateral or to extend any financing to any chapter 7 or chapter 11

trustee or other responsible person appointed for the estates of the Debtors in any Case or Successor

Case.

(d)    No Waiver.  Neither the failure of the Prepetition Secured Parties to seek

relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Loan

Documents, or otherwise (or any delay in seeking or exercising same), nor the failure of the DIP

Secured Parties to seek relief or otherwise exercise their respective rights and remedies under this

Interim Order, the DIP Loan Documents, or otherwise (or any delay in seeking or exercising same),

shall constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise.  Nothing

contained in this Interim Order (including, without limitation, the authorization of the use of any

Cash Collateral) shall impair or modify any rights, claims, or defenses available in law or equity

to any Prepetition Secured Party or any DIP Secured Party, including, without limitation, rights of

a party to a swap agreement, securities contract, commodity contract, forward contract, or

55

repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion). Except as prohibited by this Interim Order, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, the ability of the Prepetition Secured Parties or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of the Chapter 11 Cases to cases under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan or plans with respect to any of the Debtors, or (iii) except as expressly provided herein, exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Secured Parties or the Prepetition Secured Parties, respectively.

(e)      No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.  None of the DIP Agent or the DIP Lenders shall be, solely by reason of having made loans under the DIP Facility, (i) subject to entry of the Final Order, deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (a such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute) or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

(f)      No Marshaling.  Subject to the entry of the Final Order, neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable doctrine of

ACTIVE 707791045

"marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable.

(g)    <u>Amendments</u>.  The Debtors are authorized and empowered, without further notice and hearing or approval of this Court, to amend, modify, supplement, or waive any non-material provision of the DIP Loan Documents in accordance with the provisions thereof.  No waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by or on behalf of all the Debtors and the DIP Agent (at the direction of Required DIP Lenders) and, except as provided herein, approved by this Court.  Notwithstanding the foregoing, no waiver, modification or amendment of any of the provisions of this Interim Order or the DIP Loan Documents that would directly and adversely affect the rights or interests of the Prepetition Secured Parties shall be effective unless also consented to in writing by the Prepetition Agent (at the direction of the Required Prepetition Lenders).

(h)    <u>Inconsistency</u>.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.  Notwithstanding anything to the contrary contained in any other orders of this Court, any payment made or to be made under such orders, any authorization contained in such orders, or any claim for which payment is authorized under such orders shall be subject to the requirements imposed on the Debtors under this Interim Order, the Approved Budget, and the DIP Loan Documents.

(i)    <u>Enforceability</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other

ACTIVE 707791045

Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry.

(j)   <u>Reservation of Rights</u>.  Nothing in this Interim Order shall be deemed to constitute the consent of the DIP Secured Parties and the Prepetition Secured Parties, and each of the foregoing expressly reserve the right to object, to entry of any Order of the Court that provides for the sale of all or substantially all of the assets of the Debtors to any party unless, in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to Pay in Full the DIP Obligations, the Prepetition Obligations, and the Prepetition Adequate Protection, and all of the foregoing are Paid in Full on the closing date of such sale.

(k)   <u>Headings</u>.  Paragraph headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in, interpreting this Interim Order.

21.   **Final Hearing**

(a)   <u>Final Hearing Date and Time</u>.  The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for **[ ● ], 2025** at **[ ● ] [a./p.]m. (prevailing Eastern Time)** at the United States Bankruptcy Court for the Northern District Georgia.  If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by this Court.

(b)   <u>Final Hearing Notice</u>.  Within three (3) Business Days of the entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on the parties having been given notice of the Interim Hearing and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same

shall have been appointed.  Any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than **[ ● ]**, 2025 at **[ ● ]** [a./p.]m. (prevailing Eastern time) (the "Objection Deadline"), which objections shall be served so that the same are received on or before such date by:  (a) counsel for the Debtors, Greenberg Traurig, LLP, 3333 Piedmont Road, NE, Suite 2500, Atlanta, Georgia 30305 Attn: David B. Kurzweil (kurzweild@gtlaw.com) and Matthew A. Petrie (petriem@gtlaw.com); (b) counsel for the DIP Lenders and the Prepetition Lenders, Latham & Watkins LLP, 330 N. Wabash Avenue, Suite 2800, Chicago, Illinois 60611, Attn: James Ktsanes (james.ktsanes@lw.com), Ebba Gebisa (ebba.gebisa@lw.com), and Whit Morley (whit.morley@lw.com) and Latham & Watkins LLP, 1271 Avenue of the Americas, New York, New York 10020, Attn: Nikhil Gulati (nikhil.gulati@lw.com), and Scroggins, Williamson & Ray, P.C., 4401 Northside Parkway, Suite 230, Atlanta, GA 30327 Attn: J. Robert Williamson (rwilliamson@swlawfirm.com); (c) counsel to the DIP Agent and the Prepetition Agent, Seward & Kissel LLP, One Battery Park Plaza, New York, New York 10004, Attn: Gregg Bateman (bateman@sewkis.com) and John Ashmead (ashmead@sewkis.com), and Scroggins, Williamson & Ray, P.C., 4401 Northside Parkway, Suite 230, Atlanta, GA 30327 Attn: J. Robert Williamson (rwilliamson@swlawfirm.com); (d) Office of the United States Trustee for the Northern District of Georgia, 75 Ted Turner Drive, S.W. Room 362, Atlanta, Georgia, 30303, Attn: [ ● ] ([ ● ]); and (e) counsel to any Committee, and such objections shall be filed with the Clerk of the United States Bankruptcy Court for the Northern District of Georgia, in each case to allow actual receipt of the foregoing no later than the Objection Deadline.

ACTIVE 707791045

22.   **Retention of Jurisdiction**.   The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

END OF DOCUMENT

ACTIVE 707791045

*Prepared and presented by*:

**GREENBERG TRAURIG, LLP**

*/s/ David B. Kurzweil*
David B. Kurzweil (Ga. Bar No. 430492)
Matthew A. Petrie (Ga. Bar No. 227556)
Terminus 200
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia 30305
Telephone: (678) 553-2100
Email: kurzweild@gtlaw.com
         petriem@gtlaw.com

*Proposed Counsel for the Debtors and
Debtors in Possession*

61