IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| In re:<br><br>AFH AIR PROS, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10356 (PMB)<br><br>(Jointly Administered) |

**APPLICATION OF THE DEBTORS AND DEBTORS IN POSSESSION
FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION
AND EMPLOYMENT OF JEFFERIES LLC AS INVESTMENT BANKER TO
THE DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO 11 U.S.C. §§ 327(a)
AND 328(a), EFFECTIVE AS OF THE PETITION DATE; (II) MODIFYING
<u>TIME-KEEPING REQUIREMENTS; AND (III) GRANTING RELATED RELIEF</u>**

The debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned

chapter 11 cases (the "<u>Chapter 11 Cases</u>") hereby submit this application (the "<u>Application</u>"),

pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "<u>Bankruptcy</u>

<u>Code</u>"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy</u>

<u>Rules</u>"), Rule 9013-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court

for the Northern District of Georgia (the "<u>Local Bankruptcy Rules</u>") and the *Second Amended*

*and Restated General Order 26-2019, Procedures for Complex Chapter 11 Cases*, dated February

6, 2023 (the "<u>Complex Case Procedures</u>"), for entry of an order, substantially in the form attached

hereto as <u>Exhibit A</u> (the "<u>Proposed Order</u>"): (i) authorizing the Debtors to retain and employ

Jefferies LLC ("<u>Jefferies</u>") as its investment banker, effective as of the Petition Date (as defined

---

[1]   The last four digits of AFH Air Pros, LLC's tax identification number are 1228. Due to the large number of debtor
entities in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax
identification numbers is not provided herein. A complete list of such information may be obtained on the website
of the claims and noticing agent at https://www.veritaglobal.net/AirPros. The mailing address for the debtor
entities for purposes of these chapter 11 cases is:  150 S. Pine Island Road, Suite 200, Plantation, Florida 33324.

ACTIVE 707953488

below), pursuant to and subject to the conditions of that certain amended and restated engagement letter between Jefferies and the Debtors, dated as of March 10, 2025 (the "Engagement Letter"),[2] a copy of which is attached hereto as Exhibit B; (ii) modifying time-keeping requirements of Bankruptcy Rule 2016(a); and (iii) granting related relief.  In support of this Application, the Debtors submit the declaration of Jeffrey Finger, Managing Director and U.S. Co-Head of Debt Advisory & Restructuring at Jefferies (the "Finger Declaration"), attached hereto as Exhibit C and incorporated herein by reference.  In further support of this Application, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Northern District of Georgia (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.   Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, Local Bankruptcy Rule 9013-2 and the Complex Case Procedures.

## BACKGROUND

3.      On March 16, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.  The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Engagement Letter.

ACTIVE 707953488

4.      On March 31, 2025, the United States Trustee appointed the official committee of

unsecured creditors (the "Committee") in the Chapter 11 Cases. No request has been made for

appointment of a trustee or examiner.

5.      Additional information regarding the Debtors' businesses, capital structure, and the

circumstances leading to the filing of these Chapter 11 Cases is more fully set forth in the

*Declaration of Andrew D.J. Hede in Support of Chapter 11 Petitions and First Day Pleadings*

filed on the Petition Date.

## RELIEF REQUESTED

6.      By this Application, the Debtors request entry of the Proposed Order (i) authorizing

the Debtors to retain and employ Jefferies as their investment banker, effective as of the Petition

Date, pursuant to and subject to the conditions of the Engagement Letter, as may be modified in

the Proposed Order, which, among other things, describes the services the Debtors seek to have

Jefferies perform on their behalf and sets forth the fee and expense structure and the

indemnification, contribution, reimbursement and related provisions; (ii)  modifying certain time-

keeping requirements of Bankruptcy Rule 2016(a); and (iii) granting related relief.

## JEFFERIES' QUALIFICATIONS AND THE NEED FOR JEFFERIES' SERVICES

7.      The Debtors submit this Application because of their need to retain a qualified

investment banker to assist the Debtors with certain critical tasks associated with guiding the

Debtors through these Chapter 11 Cases.  The Debtors believe that their retention of an investment

banker is necessary and appropriate to enable them to evaluate the financial and economic issues

raised by the Debtors' Chapter 11 Cases and effectively carry out their duties as debtors in

possession.

8.      The Debtors selected Jefferies as their investment banker in these cases based upon

Jefferies' extensive experience in matters involving complex financial restructurings and

- 3 -

Jefferies' excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtor and creditor constituencies throughout the United States.  Jefferies has been continuously engaged by the Debtors since July 2023, and, as a result, is familiar with the Debtors' corporate and capital structure, management, business operations, and potential investor or party to a sale transaction universe.  Thus, the Debtors believe that Jefferies is both well qualified and uniquely able to advise the Debtors in these Chapter 11 Cases.

9.        As set forth in the Finger Declaration, Jefferies is a full-service investment banking firm, with thousands of employees around the world.  Jefferies and its senior professionals have extensive expertise providing investment banking services to financially distressed companies, creditors, committees, equity holders, asset purchasers and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court.  Jefferies and its professionals are providing or have provided investment banking, financial advisory and other services in connection with the following recent cases, among others:  *In re Steward Health Care System LLC, et al.,* Case No. 24-90213 (CML) (Bankr. S.D. Tex. July 12, 2024); *In re WOM, S.A.*, Case No. 24-10628 (KBO) (Bankr. D. Del. June 20, 2024); *In re Number Holdings, Inc.*, Case No. 24-10719 (JKS) (Bankr. D. Del. Apr. 7, 2024); *In re Ebix*, Case No. 24-80004 (SWE) (Bankr. N.D. Tex. Feb. 6, 2024); *In re GOL Linhas Aéreas Inteligentes S.A.*, Case No. 24-10118 (MG) (Bankr. S.D.N.Y. Jan. 25, 2024); *In re Barretts Minerals Inc.*, Case No. 23-90794 (MI) (Bankr. S.D. Tex. Nov. 21, 2023); *Unconditional Love Inc.*, Case No. 23-11759 (MFW) (Bankr. D. Del. Oct. 23, 2023); *In re Aerotech Miami Inc. d/b/a iAero Tech*, Case No. 23-17503 (RAM) (Bankr. S.D. Fla. Oct. 16, 2023); *In re AppHarvest Products, LLC*, Case No. 23-90745 (DRJ) (Bankr. S.D. Tex. Sept. 12, 2023); *In re Qualtek Services, Inc.*, Case No. 23-90584 (CML) (Bankr. S.D. Tex. Aug. 4, 2023); *In re Benefytt Technologies, Inc.*, Case No. 23-90566 (CML) (Bankr. S.D. Tex.

- 4 -

ACTIVE 707953488

July 24, 2023); *In re Pipeline Health System, LLC*, Case No. 22-90291 (MI) (Bankr. S.D. Tex.

Oct. 2, 2022); *In re Mining Project Wind Down Holdings, Inc.* (*f/k/a Compute North Holdings,

Inc.*), Case No. 22-90273 (MI) (Bankr. S.D. Tex. Sep. 22, 2022); *In re SAS AB*, Case No. 22-10925

(MEW) (Bankr. S.D.N.Y. Sept. 19, 2022).[3]

## SCOPE OF SERVICES

10.     Subject to the Court's approval, the Debtors anticipate that Jefferies will perform

or provide the following investment banking services, among others, pursuant to the Engagement

Letter, as mutually agreed upon by Jefferies and the Debtors:[4]

(a)     provide advice and assistance to the Debtors in connection with analyzing, structuring, negotiating and effecting, and acting as exclusive investment banker to the Debtors in connection with, any restructuring, reorganization, recapitalization, repayment or material modification of the Debtors' outstanding indebtedness or obligations (including, without limitation, any preferred equity), however achieved, including, without limitation, through any offer by the Debtors with respect to any outstanding Company indebtedness or obligations, a solicitation of votes, approvals, or consents giving effect thereto (including with respect to a prepackaged or pre-negotiated plan of reorganization or other plan pursuant to the Bankruptcy Code), the execution of any agreement giving effect to the same, an offer by any third party to convert, exchange or acquire any outstanding Company indebtedness or obligations, or any similar balance sheet restructuring involving the Debtors (any of the foregoing, a "Restructuring");

(b)     perform the following investment banking services, among others, for the Debtors in connection with a Restructuring: (A) becoming familiar with, to the extent Jefferies deems appropriate, and analyzing, the business, operations, properties, financial condition and prospects of the Debtors; (B) advising the Debtors on the current state of the "restructuring market"; (C) assisting and advising the Debtors in developing a general strategy for accomplishing a Restructuring; (D) assisting and advising the Debtors in implementing a Restructuring; (E) assisting and advising the Debtors in evaluating and analyzing a Restructuring, including the value of the securities or debt

---

[3]   Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application. Copies of these orders, however, are available on request.

[4]   To the extent there is any inconsistency between this summary of the services set forth in the Engagement Letter and the terms of the Engagement Letter, the terms of the Engagement Letter shall control.

- 5 -

ACTIVE 707953488

instruments, if any, that may be issued in any such Restructuring; and (F) rendering such other investment banking services as may from time to time be agreed upon by the Debtors and Jefferies;

(c)  provide the Debtors with financial advice and assistance in connection with a possible sale, disposition or other business transaction or series of transactions involving all or a portion of the equity interests or assets of one or more entities comprising the Debtors to one or more unaffiliated third parties whether directly or indirectly and through any form of transaction, including, without limitation, merger, reverse merger, liquidation, stock sale, asset sale, asset swap, recapitalization, reorganization, consolidation, amalgamation, spin-off, split-off, a sale under section 363 of the Bankruptcy Code (including, but not limited to, any "credit bid" made pursuant to section 363(k) of the Bankruptcy Code and including under a prepackaged or pre-negotiated plan of reorganization or other plan pursuant to the Bankruptcy Code) or other transaction (any of the foregoing, an "M&A Transaction");

(d)  Jefferies' services under the Engagement Letter include, as requested by the Debtors and reasonably appropriate, assisting the Debtors in: (i) the preparation of certain marketing materials (the "Marketing Materials") to be distributed by Jefferies on behalf of the Debtors to prospective purchasers; and (ii) the preparation and maintenance of a list of prospective Transaction counterparties, including those that have been sent the Marketing Materials, and Jefferies shall provide such list of prospective M&A Transaction counterparties to the Debtors upon request.  Jefferies agrees that the contact of potential M&A Transaction counterparties under the Engagement Letter and the dissemination of Marketing Materials shall be coordinated with the Debtors; and

(e)  Jefferies will act as sole and exclusive investment banker in connection with any of the following (each, a "Financing", and a Financing, a Restructuring and an M&A Transaction, each and together, a "Transaction"): (A) the sale and/or placement, whether in one or more public or private transactions, of (i) common equity, preferred equity, and/or equity-linked securities of the Debtors (regardless of whether sold by the Debtors or its securityholders), including, without limitation, convertible debt securities (individually and collectively, "Equity Securities"), and/or (ii) notes, bonds, debentures and/or other debt securities of the Debtors, including, without limitation, mezzanine and asset-backed securities (individually and collectively, "Debt Securities"), and/or (B) the arrangement and/or placement of any bank debt and/or other credit facility of the Debtors including debtor-in-possession financing (individually and collectively, "Bank Debt," and any or a combination of Bank Debt, Equity Securities and/or Debt Securities, "Instruments").  For the avoidance of doubt, if a Financing is executed in more than one issuance or tranche, each shall be deemed to be a Financing for the purposes of the Engagement Letter.

- 6 -

11.     The Debtors do not believe that the services to be rendered by Jefferies will be duplicative of the services performed by any other professional, and the Debtors will work with Jefferies and the other professionals retained by the Debtors to minimize and avoid duplication of services.

## PROFESSIONAL COMPENSATION

12.     As more fully set forth in the Engagement Letter, Jefferies and the Debtors have agreed, subject to the Court's approval, on the following terms of compensation and expense reimbursement (the "Fee and Expense Structure"):[5]

(i) **Monthly Fee**.  A monthly fee (the "Monthly Fee") equal to $100,000 accruing and payable as of and with effect as of the Petition Date and in advance of each monthly anniversary thereafter until the termination of the Engagement Letter. An amount equal to 100% of the Monthly Fees actually paid to Jefferies shall be credited once, without duplication, against any Restructuring Fee or M&A Transaction Fee (each as defined below) that subsequently become payable to Jefferies under the Engagement Letter following the consummation of a Restructuring or M&A Transaction, as applicable.

(ii) **Restructuring Fee**.  Promptly upon the consummation of a Restructuring, a fee (a "Restructuring Fee") in an amount equal to $1.75 million; provided, however, that no Restructuring Fee shall be payable to Jefferies with respect to any liquidating plan under chapter 11 of the Bankruptcy Code that provides for the orderly wind down and dissolution of the remaining assets or business of the Debtors following one or more M&A Transactions in connection with which Jefferies has received an M&A Transaction Fee that is not subject to avoidance under the Bankruptcy Code or applicable law.

(iii) **PIMCO M&A Transaction Fee**.  At the closing of an M&A Transaction solely involving PIMCO or an existing affiliate of PIMCO as of the date hereof as the M&A Transaction counterparty (a "PIMCO M&A Transaction"), a fee equal to the lesser of (a) $250,000 and (b) 2.0% of the aggregate gross proceeds received or to be received in connection with a PIMCO M&A Transaction, including, for the avoidance of doubt, any and all amounts that are credit bid in such PIMCO M&A Transaction (the "PIMCO M&A Transaction Fee"); provided that the portion of the PIMCO M&A Transaction Fee attributable to any gross

---

[5]     To the extent there is any inconsistency between the summary of the Fee and Expense Structure set forth in this Application and the Fee and Expense Structure as set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

ACTIVE 707953488

proceeds not paid at the closing thereof shall be paid when and to the extent such contingent consideration is actually paid to the Debtors or its direct or indirect securityholders.[6]

(iv) **M&A Transaction Fee**.

- o At the closing of an M&A Transaction (other than a PIMCO M&A Transaction), an amount to be determined according to the following schedule (together with the PIMCO M&A Transaction Fee, the "M&A Transaction Fee"):

  - (a) 2.0% of Transaction Value[7] less than or equal to $175.0 million; *plus*

---

[6] For the avoidance of doubt, where the M&A Transaction involves one or more parties in addition to PIMCO or an existing affiliate of PIMCO, Jefferies shall be entitled to the M&A Transaction Fee (as defined below).

[7] "Transaction Value" means, without duplication, (A) the aggregate amount of cash and the fair market value (determined as set forth below) of any securities or other property or consideration directly or indirectly paid or payable to the Debtors or their equity holders in connection with an M&A Transaction, including, without limitation, (1) any dividends or distributions or any stock redemptions or repurchases outside of the normal course of business, (2) all amounts payable in relation to, or other value ascribed in the M&A Transaction (including the form of "rollover" options or warrants) in respect of, warrants, options or other convertible securities, (3) the full amount of any consideration placed in escrow or otherwise withheld to support the Debtors' (or its securityholders') indemnification, purchase price adjustment or similar obligations under the definitive documents with respect to the M&A Transaction, (4) the full amount of any contingent consideration to be paid in the future, including, without limitation, any earn-outs or other similar payments contingent on future performance and (5) the full amount of any payments in installments (the amounts set forth in clauses (3), (4), and (5) above, "Future Consideration"); provided that the portion of the M&A Transaction Fee attributable to Future Consideration shall be paid when and to the extent such Future Consideration is actually paid to the Debtors or its securityholders; provided, further, that any agreement relating to the payment of Future Consideration shall expressly provide, to the reasonable satisfaction of Jefferies, that Jefferies be paid the portion of the M&A Transaction Fee attributed to Future Consideration simultaneous with the Debtors' or their former or current shareholders' receipt of such Future Consideration; plus (B) all indebtedness for borrowed money, capitalized leases and other debt-like items treated as indebtedness in the definitive documentation for the M&A Transaction and preferred stock directly or indirectly assumed, refinanced, retired or extinguished (and all payments made and expenses incurred in connection therewith, including, without limitation, prepayment premiums and defeasance costs) in connection with the M&A Transaction (including, in the case of the sale, exchange or purchase of equity securities, any such liabilities outstanding at the closing of the M&A Transaction); plus (C) in the case of an M&A Transaction structured as a sale, transfer, exchange or purchase of equity securities, if less than 100% of the equity of the Debtors' businesses subject to the M&A Transaction are transferred in the M&A Transaction, the value of any retained interest in such businesses based on the value paid for or ascribed to the equity interests transferred in the M&A Transaction. Amounts paid in respect of cash and cash equivalents held by the Debtors or any of its subsidiaries or affiliates at closing that are excluded from a working capital or similar threshold calculation under the definitive M&A Transaction documents shall not be included in the calculation of Transaction Value. For the avoidance of doubt and notwithstanding anything to the contrary contained in the Engagement Letter, the Debtors' and/or the Transaction counterparty's Transaction-related expenses (including, but not limited to, the fees and expenses owed to Jefferies and the Debtors' legal counsel) shall not be deducted from Transaction Value or otherwise taken into account when calculating Transaction Value under the Engagement Letter.

ACTIVE 707953488

    (b) 5.0% of that portion of Transaction Value greater than $175.0 million but less than or equal to $200.0 million; *plus*

    (c) 10.0% of that portion of Transaction Value greater than $200.0 million.

  o  Notwithstanding anything to the contrary, the minimum M&A Transaction Fee paid at the first closing of an M&A Transaction (including, for the avoidance of doubt, a PIMCO M&A Transaction) shall be $1.75 million (and shall only be payable once) (the "Minimum M&A Fee") and in the event of multiple M&A Transactions, the M&A Transaction Fee payable at closing of each M&A Transaction subsequent to the initial M&A Transaction shall equal the aggregate M&A Transaction Fees calculated for all M&A Transactions less the M&A Transaction Fees actually paid to Jefferies; provided, however, if the Minimum M&A Transaction Fee becomes payable in connection with a PIMCO M&A Transaction involving less than $1.75 million in gross proceeds (including any and all amounts credit bid), (i) the Debtors shall pay to Jefferies an amount equal to the gross proceeds paid (including any and all amounts credit bid) in such PIMCO M&A Transaction and (ii) the remaining portion of the Minimum M&A Transaction Fee shall be paid by the Debtors upon the earliest of (a) the closing of a subsequent M&A Transaction, (b) the date that is three months from the closing of such PIMCO M&A Transaction and (c) the confirmation of any chapter 11 plan involving the Debtors.

(v) **Financing Fee**. Promptly upon consummation of a Financing, a fee (a "Financing Fee") equal to an amount to be determined according to the following schedule: (a) 2.0% of the aggregate principal amount of any secured Bank Debt or secured Debt Securities of any Financing; (b) 3.5% of the aggregate principal amount of any Bank Debt or Debt Securities of any Financing not covered by paragraph 13(iv)(a) immediately above (section 4(d)(i) of the Engagement Letter); and (c) 5.0% of the aggregate gross proceeds received or to be received from the sale of Equity Securities, including, without limitation, aggregate amounts committed by investors to purchase Equity Securities in connection with any Financing (the "Equity Financing Fee"); provided that the portion of the Financing Fee attributable to gross proceeds that have been committed but not yet paid shall be paid when and to the extent

---

For purposes of computing the M&A Transaction Fee, any non-cash consideration shall be valued as set forth in the definitive agreements for the M&A Transaction or, if such agreements do not set forth a value, (x) publicly-traded securities shall be valued at the average of their 4:00 p.m. closing prices (as reported in The Wall Street Journal) for the five trading days prior to the date that is two business days prior to the date of announcement of the M&A Transaction and (y) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by the Debtors and Jefferies.

ACTIVE 707953488

such gross proceeds are actually paid to the Debtors or its direct or indirect securityholders; provided, further, no Financing Fee shall be payable to Jefferies with respect to any portion of a Financing provided by PIMCO or any affiliate of PIMCO.

(vi) To the extent a Transaction qualifies as both a Restructuring and an M&A Transaction, Jefferies shall only be entitled to the higher of the Restructuring Fee and the M&A Transaction Fee payable on account of such Transaction and not both such fees.  To the extent a Transaction qualifies as both a Financing involving Equity Securities and an M&A Transaction, Jefferies shall only be entitled to the higher of the Equity Financing Fee and the M&A Transaction Fee payable on account of such Transaction and not both such fees.

(vii) **Break-Up Fee**.  If, following or in connection with the termination, abandonment or failure to occur of any proposed M&A Transaction in respect of which the Debtors entered into an agreement (i) during the Term or (ii) during the 12-month period following the Term, and the Debtors or any affiliate is entitled to receive a break-up, termination, "topping," expense reimbursement, earnest money payment or similar fee or payment (including, without limitation, any judgment for damages or amount in settlement of any dispute as a result of such termination, abandonment or failure to occur) (each and together, "Termination Payments"), Jefferies shall be entitled to a cash fee (the "Break-Up Fee"), payable promptly following the Debtors' or such affiliate's receipt of such amount, equal to 25% of the aggregate amount of all Termination Payments paid to the Debtors or such affiliate (net of out-of-pocket, unreimbursed expenses of the Debtors paid or owing to third parties (other than any amounts owed or paid to Jefferies)); provided, however, that the Break-Up Fee shall not be greater than the M&A Transaction Fee that would have been payable had the proposed M&A Transaction been consummated.

(viii) **Expenses**.  In addition to any fees that may be paid to Jefferies under the Engagement Letter, whether or not any Transaction occurs, the Debtors will reimburse Jefferies, promptly upon receipt of an invoice therefor, for all reasonable out-of-pocket expenses (including fees and expenses of its counsel, ancillary expenses and the fees and expenses of any other independent experts retained by Jefferies) incurred by Jefferies and its designated affiliates in connection with the engagement contemplated herein and in the Engagement Letter; provided that the amount of such fees and expenses for which Jefferies shall seek reimbursement from the Debtors (other than fees and expenses of Willkie Farr & Gallagher LLP, Jefferies' counsel, incurred in connection with the Transaction or any bankruptcy case involving the Debtors) shall not exceed $100,000 in the aggregate without the Debtors' consent (not to be unreasonably withheld).

13.     During the pendency of these Chapter 11 Cases, Jefferies will apply to the Court

for the allowance of compensation for professional services rendered and reimbursement of

- 10 -

expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy

Rules, the Local Bankruptcy Rules and any other applicable procedures and orders of the Court

consistent with the proposed compensation arrangement set forth in the Engagement Letter.

**THE FEE AND EXPENSE STRUCTURE IS APPROPRIATE AND REASONABLE
AND SHOULD BE APPROVED UNDER BANKRUPTCY CODE SECTION 328(A)**

14.     The Debtors believe that the Fee and Expense Structure as set forth in the

Engagement Letter is reasonable.  The Fee and Expense Structure appropriately reflects the nature

of the services to be provided by Jefferies and the fee structures typically utilized by leading

investment banking firms of similar stature to Jefferies for comparable engagements, both in and

out of court. The Fee and Expense Structure is consistent with Jefferies' normal and customary

billing practices for cases of this size and complexity that require the level of scope and services

outlined herein.  Moreover, the Fee and Expense Structure is reasonable in light of (i) industry

practice; (ii) market rates charged for comparable services both in and out of the chapter 11

context; (iii) Jefferies' substantial experience with respect to investment banking services; and

(iv) the nature and scope of work to be performed by Jefferies in these Chapter 11 Cases.

15.     In particular, the Debtors believe that the Fee and Expense Structure creates a

proper balance between fixed monthly fees and contingency fees.  Similar fixed and contingency

fee arrangements have been approved and implemented in other recent large chapter 11 cases.  *See*,

*e.g.*, *In re Steward Health Care System LLC*, Case No. 24-90213 (CML) (Bankr. S.D.T.X. July 12,

2024); *In re WOM, S.A.*, Case No. 24-10648 (KBO) (Bankr. D. Del. June 20, 2024); *In re Number

Holdings, Inc.*, Case No. 24-10719 (JKS) (Bankr. D. Del. Apr. 7, 2024); *In re Ebix*, Case No. 24-

80004 (SWE) (Bankr. N.D. Tex. Feb. 6, 2024); *In re GOL Linhas Aéreas Inteligentes S.A.*, Case

No. 24-10118 (MG) (Bankr. S.D.N.Y. Jan. 25, 2024); *In re Barretts Minerals Inc.*, Case No. 23-

90794 (MI) (Bankr. S.D. Tex. Nov. 21, 2023); *In re Unconditional Love Inc.*, Case No. 23-11759

- 11 -

ACTIVE 707953488

(MFW) (Bankr. D. Del. Oct. 23, 2023); *In re Pipeline Health System, LLC*, Case No. 22-90291

(MI) (Bankr. S.D. Tex. Oct. 2, 2022); *In re Mining Project Wind Down Holdings, Inc. (f/k/a*

*Compute North Holdings, Inc.)*, Case No. 22-90273 (MI) (Bankr. S.D. Tex. Sep. 22, 2022); *In re*

*SAS AB*, Case No. 22-10925 (MEW) (Bankr. S.D.N.Y. Sept. 19, 2022); *In re Vewd Software USA,*

*LLC*, Case No. 21-12065 (MEW) (Bankr. S.D.N.Y. Dec. 15, 2021); *In re Limetree Bay Services,*

*LLC*, Case No. 21-32351 (DRJ) (Bankr. S.D. Tex. Sep. 10, 2021).

## RECORD KEEPING AND APPLICATIONS FOR COMPENSATION

16.     Consistent with its ordinary practice and the practice of investment bankers in other

chapter 11 cases whose fee arrangements are not hours-based, Jefferies does not maintain

contemporaneous time records or provide or conform to a schedule of hourly rates for its

professionals.  Given the foregoing and that Jefferies' compensation is based on fixed fees, the

Debtors request that, notwithstanding anything to the contrary in the Bankruptcy Code, the

Bankruptcy Rules, the Local Bankruptcy Rules, any order of this Court, the Complex Case

Procedures or any other guidelines regarding the submission and approval of fee applications,

Jefferies' professionals be excused from maintaining time records as set forth in Bankruptcy Rule

2016(a) in connection with the services to be rendered pursuant to the Engagement Letter.  Jefferies

will, however, maintain records in support of any expenses incurred in connection with the

rendering of its services in these Chapter 11 Cases.

## INDEMNIFICATION

17.     As part of the overall compensation payable to Jefferies under the terms of the

Engagement Letter, the Engagement Letter provides for certain indemnification obligations to

Jefferies and its affiliates, and each of their respective officers, directors, managers, members,

partners, employees and agents, and any other controlling persons, and their successors and

permitted assigns, to the fullest extent lawful, from and against any claims, liabilities, losses,

- 12 -

actions, suits, proceedings, third party subpoenas, damages, costs and expenses, as incurred, related to or arising out of or in connection with Jefferies' services under the Engagement Letter.[8] Such terms of indemnification, as modified by the Proposed Order, reflect the qualifications and limits on such terms that are customary for investment bankers such as Jefferies in chapter 11 cases. *See, e.g., In re Steward Health Care System LLC*, Case No. 24-90213 (CML) (Bankr. S.D.T.X. July 12, 2024) (approving indemnification provisions); *In re WOM, S.A.*, Case No. 24-10648 (KBO) (Bankr. D. Del. June 20, 2024) (same); *In re Number Holdings, Inc.*, Case No. 24-10719 (JKS) (Bankr. D. Del. Apr. 7, 2024) (same); *In re Ebix*, Case No. 24-80004 (SWE) (Bankr. N.D. Tex. Feb. 6, 2024) (same); *In re GOL Linhas Aéreas Inteligentes S.A.*, Case No. 24-10118 (MG) (Bankr. S.D.N.Y. Jan. 25, 2024) (same); *In re Barretts Minerals Inc.*, Case No. 23-90794 (MI) (Bankr. S.D. Tex. Nov. 21, 2023) (same); *In re Unconditional Love Inc.*, Case No. 23-11759 (MFW) (Bankr. D. Del. Oct. 23, 2023) (same); *In re Aerotech Miami Inc. d/b/a iAero Tech*, Case No. 23-17503 (RAM) (Bankr. S.D. Fla. Oct. 16, 2023) (same); *In re AppHarvest Products, LLC*, Case No. 23-90745 (DRJ) (Bankr. S.D. Tex. Sept. 12, 2023) (same); *In re Pipeline Health System, LLC*, Case No. 22-90291 (MI) (Bankr. S.D. Tex. Oct. 2, 2022) (same); *In re Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.)*, Case No. 22-90273 (MI) (Bankr. S.D. Tex. Sep. 22, 2022) (same); *In re SAS AB*, Case No. 22-10925 (MEW) (Bankr. S.D.N.Y. Sept. 19, 2022) (same).

## JEFFERIES' DISINTERESTEDNESS

18.   As further set forth in the Finger Declaration, Jefferies has informed the Debtors that, to the best of Jefferies' knowledge, information and belief, as of the date hereof, except as set

---

[8]   To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in Schedule A to the Engagement Letter, the terms of the Engagement Letter shall control.

ACTIVE 707953488

forth in the Finger Declaration, (i) Jefferies has no connection with the Debtors, their creditors, equity security holders or other parties in interest in these Chapter 11 Cases; (ii) Jefferies does not hold or represent any entity having an interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders; and (iii) Jefferies (a) is not a creditor, equity security holder or an insider of any of the Debtors and (b) is not or was not, within two years before the Petition Date, a director, officer, or employee of the Debtors.  In addition, none of the Jefferies professionals expected to assist the Debtors in these Chapter 11 Cases is related or connected to any United States Bankruptcy Judge for the Northern District of Georgia (Newnan Division), the United States Trustee for Region 21 (the "U.S. Trustee") or any person employed by the U.S. Trustee.

19.     During the 90-day period prior to the commencement of these Chapter 11 Cases, Jefferies received: (i) $48,592.78 on account of expense reimbursements; and (ii) expense retainers in the amount of $45,000.00, which it has or will apply against any unpaid expenses incurred by Jefferies prior to the Petition Date.  Jefferies will include in its first interim fee application information regarding any such application.  Subject to such application, Jefferies has agreed to waive any amounts outstanding as of the Petition Date.

20.     The Debtors have been advised that Jefferies has agreed not to share and will not share with any other person or entity the compensation to be received for professional services rendered in connection with these Chapter 11 Cases in accordance with section 504(a) of the Bankruptcy Code.

21.     Based on the foregoing, the Debtors believe that Jefferies is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and utilized in section 328(c) of the Bankruptcy Code.

- 14 -

ACTIVE 707953488

**BASIS FOR RELIEF**

22.     The Debtors seek entry of an order authorizing them to retain and employ Jefferies pursuant to sections 327 and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code provides, in relevant part, that the Debtors, with the Bankruptcy Court's approval, "may employ one or more attorneys, accountants . . . or other professional person."  Section 328(a) of the Bankruptcy Code provides, in relevant part, that the Debtors, with the Bankruptcy Court's approval, "may employ or authorize the employment of a professional person under section . . . 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

23.     Given the numerous issues that Jefferies may be required to address in performing its services for the Debtors pursuant to the Engagement Letter, Jefferies' commitment to the variable time requirements and effort necessary to address all such issues as they arise, and the market prices for Jefferies' services for engagements of this nature, the Debtors submit that the terms and conditions of the Engagement Letter are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.  The Debtors also believe that the Fee and Expense Structure appropriately reflects (i) the nature and scope of Jefferies' services, (ii) Jefferies' substantial experience with respect to investment banking services, and (iii) the fee structures typically utilized by Jefferies and other investment banks, which do not bill their clients on an hourly basis, in bankruptcy or otherwise.

24.     As set forth above, and notwithstanding Court approval of Jefferies' engagement under section 328(a) of the Bankruptcy Code, Jefferies intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Complex Case

- 15 -

ACTIVE 707953488

Procedures and any other applicable procedures and orders of this Court, with certain limited modifications as set forth herein.  Notwithstanding the foregoing, Jefferies has agreed that the U.S. Trustee may review Jefferies' compensation under section 330 of the Bankruptcy Code on the terms set forth in the Proposed Order.

25.     In light of the foregoing, the Debtors submit that the retention of Jefferies is in the best interest of their estates, their creditors, and all parties in interest in these Chapter 11 Cases. Jefferies has extensive experience in matters involving complex financial restructurings and an excellent reputation for services rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States.  The Debtors have satisfied the requirements of the Bankruptcy Code and the Bankruptcy Rules to support entry of an order authorizing the Debtors to retain and employ Jefferies in these Chapter 11 Cases on the terms described herein and in the Engagement Letter.

## NOTICE

26.     Notice of this Application will be provided to:  (i) the U.S. Trustee; (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) counsel to the Debtors' prepetition and postpetition lenders and collateral agent; (iv) the United States Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the Georgia Department of Revenue; (vii) the Attorney General for the State of Georgia; (viii) the United States Attorney for the Northern District of Georgia; (ix) the state attorneys general for states in which the Debtors conduct business; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, under the circumstances, no other or further notice is required.

27.     No previous application for the relief sought herein has been made to this Court or to any other court.

- 16 -

ACTIVE 707953488

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court: (a) enter the Proposed

Order, substantially in the form attached hereto as Exhibit A, authorizing the Debtors to retain and

employ Jefferies as their investment banker in these Chapter 11 Cases, effective as of the Petition

Date, and (b) grant such other and further relief as the Court may deem just and proper.

Dated: March 31, 2025            /s/ Andrew Hede
                                 Andrew Hede
                                 Chief Restructuring Officer of the Debtors and
                                 Debtors in Possession

ACTIVE 707953488